917 So.2d 263 (2005)
Bruce A. MAGUIRE and St. Marks Development Authority, Inc., Appellants,
v.
William C. KING, as Trustee for the W. Ray King Trust, Appellee.
No. 5D04-3988.
District Court of Appeal of Florida, Fifth District.
December 16, 2005.
*264 Frank D. Upchurch, III and Richard Q. Lewis, III, of Upchurch, Bailey & Upchurch, P.A., St. Augustine, for Appellants.
Michael Cavendish, of Boyd & Jenerette, P.A., Jacksonville, for Appellee.
THOMPSON, J.
Defendants Bruce A. Maguire ("Maguire") and the St. Marks Development Authority, Inc. ("St. Marks") timely appeal a non-final order that granted their motion to compel arbitration as to the first two counts of a complaint, but denied their motion as to its last three counts. We have jurisdiction[1] and reverse.
In February 2003, Plaintiff William C. King ("King") and St. Marks entered into a contract in which King agreed to purchase 3.49 acres of property in St. Johns County. King negotiated the contract with Maguire, an officer and shareholder of St. Marks. Maguire represented that the transaction would include two acres of permitted drainage rights. On 31 May 2003, the parties reduced their drainage rights agreement to writing and executed an addendum to the agreement, which provided that St. Marks would "release all drainage system capacities relative to the subject property, approximately 2 +/- acres." The closing took place in June 2004.
After closing, King discovered that Maguire and St. Marks previously transferred an acre of the drainage rights during the sale of a different parcel, leaving King with approximately one acre of drainage rights. King alleged a loss in property value and other damages because half of the upland portion of the property was undevelopable.
*265 King filed a five-count complaint in circuit court in April 2004. The factual allegations in the complaint were realleged in each count. Counts One and Two requested specific performance and damages for breach of contract because St. Marks failed to provide King with two acres of drainage rights. Count Three, for fraud in the inducement, alleged that Maguire, as St. Marks's agent and authorized representative, made a false statement of material fact to King regarding the existence of and St. Marks's intent to convey two acres of permitted drainage rights. Count Four, for fraud, alleged that Maguire, for his own benefit as a shareholder of St. Marks, made a false statement of material fact to King regarding the existence of and St. Marks's intent to convey two acres of permitted drainage rights. Count Five, for negligent misrepresentation, alleged that Maguire, for himself and on behalf of St. Marks, made a false statement of material fact to King regarding the existence of and St. Marks's intent to convey two acres of permitted drainage rights.
Maguire and St. Marks moved to dismiss and compel arbitration in accordance with the contract's arbitration provision. The court granted the motion with respect to the first two counts, but denied it for the remaining counts, holding that "tort claims ... are not subject to arbitration under the contract, and the arbitrator has no jurisdiction to arbitrate those claims."
The contract's dispute resolution provision provided:
14. DISPUTE RESOLUTION: This Contract will be construed under Florida law. All controversies, claims, and other matters in question arising out of or relating to this transaction or this Contract or its breach will be settled as follows:
(a) Disputes concerning entitlement to deposits made or agreed to be made: ...
* * * * * *
(b) All other disputes: Buyer and Seller will have 30 days from the date a dispute arises between them to attempt to resolve the matter through mediation, failing which the parties will resolve the dispute through neutral binding arbitration in the county where the Property is located. The arbitrator may not alter the Contract terms or award any remedy not provided for in this Contract. The award will be based on the greater weight of the evidence and will state findings of fact and the contractual authority on which it is based. If the parties agree to use discovery, it will be in accordance with the Florida Rules of Civil Procedure and the arbitrator will resolve all discovery-related disputes.... This clause will survive closing.
(c) Mediation and Arbitration; Expenses:... "Arbitration" is a process in which the parties resolve a dispute by a hearing before a neutral person who decides the matter and whose decision is binding on the parties. Arbitration will be in accordance with the rules of the AAA or other arbitrator agreed on by the parties. Each party to any arbitration will pay its own fees, costs and expenses, including attorneys' fees, and will equally split the arbitrators' fees and administrative fees of arbitration. In a civil action to enforce an arbitration award, the prevailing party to the arbitration shall be entitled to recover from the nonprevailing party reasonable attorneys' fees, costs and expenses.
(emphasis in original).
To decide whether the trial court properly decided the motions to compel arbitration for the last three counts, we *266 consider three elements: "(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999) (holding that a wrongful death action resting on a tort theory of common law negligence was unrelated to the parties' contractual rights and obligations); see also Qubty v. Nagda, 817 So.2d 952, 956 (Fla. 5th DCA 2002). The issue in this case is whether the second Seifert prong was met. We conclude that it was.
Arbitrability of a dispute turns on the parties' intent; no party must submit a dispute to arbitration it did not intend and agree to arbitrate. Seifert, 750 So.2d at 636. However, "[i]t is the intention as expressed by the language employed in the agreements that governs, not the after-the-fact testimony of the parties." Bill Heard Chevrolet Corp. v. Wilson, 877 So.2d 15 (Fla. 5th DCA 2004). More important, Florida public policy favors resolving disputes through arbitration when the parties have agreed to arbitrate. Orkin Exterminating Co. v. Petsch, 872 So.2d 259, 263 (Fla. 2d DCA 2004). To implement this policy, this court has interpreted the arbitration provision to give reasonable meaning to all terms, rather than to render part of the contract toothless. Id. at 263. All doubts regarding the scope of an arbitration agreement must be resolved in favor of arbitration. Qubty, 817 So.2d at 956.
The supreme court in Seifert applied the "contractual nexus" test, by which courts determine a claim's arbitrability by considering the "existence of some nexus between the dispute and the contract containing the arbitration clause." Seifert, 750 So.2d at 638; see also Hirshenson v. Spaccio, 800 So.2d 670, 675 (Fla. 5th DCA 2001). A dispute arises from the contract if it at least raises an issue that requires reference to or construction of some portion of the contract for resolution. Seifert, 750 So.2d at 639. Arbitrability depends on the relationship between the claim and the agreement, not the legal label attached to the dispute. Stacy David, Inc. v. Consuegra, 845 So.2d 303, 306 (Fla. 2d DCA 2003). Therefore, although tort claims based on duties owed to the public under common law or public policy may fall outside an arbitration clause, tort claims based on duties created by a contractual relationship between the parties are normally arbitrable under broad arbitration provisions. Seifert, 750 So.2d at 640-41; Stacy David, 845 So.2d at 306.
This is not a case in which it is a "mere coincidence that the parties in dispute have a contractual relationship." Seifert, 750 So.2d at 638. On the contrary, the tort claims are nonsensical when divorced from the contractual obligation to deliver approximately two acres of drainage rights. Nor is this a case in which the tort claims should be excluded from arbitration because the arbitration provision was narrow in scope or present only in a separate agreement. See Coggin Auto. Corp. v. Reed, 750 So.2d 744, 746 (Fla. 5th DCA 2000) (holding that a dispute concerning an insurance policy with one party was not arbitrable under the arbitration provision in a vehicle purchase contract with another party); Grosseibl v. J. Chris Howard Builders, Inc., 739 So.2d 1255, 1256 (Fla. 5th DCA 1999) (ruling that a claim against the builder regarding a home sale and purchase, and undisclosed prior existence of a swimming pool, was not covered in an arbitration agreement addressing only claims "arising out of or relating to this warranty," where the warranty expressly excluded coverage for issues addressed by the plaintiff's complaint); Miller v. Roberts, *267 682 So.2d 691, 692 (Fla. 5th DCA 1996) (concerning an arbitration provision that covered only disputes concerning the terms of the underlying agreement); Fla. Dep't of Ins. v. World Re, Inc., 615 So.2d 267, 268 (Fla. 5th DCA 1993) (holding that an arbitration clause governing disputes "as to the interpretation of this certificate" did not encompass claims for fraud in the inducement); Ocwen Fed. Bank FSB v. LVWD, Ltd., 766 So.2d 248, 249 (Fla. 4th DCA 2000) (addressing an arbitration clause that provided only disputes concerning one paragraph of the agreement would be settled by arbitration, and that no other issues or disputes between the parties would be settled by arbitration).
Furthermore, a claim of fraud in the inducement does not preclude enforcement of the arbitration provision. Vacation Beach, Inc. v. Charles Boyd Constr., Inc., 906 So.2d 374, 377-78 (Fla. 5th DCA 2005) (citing Qubty, 817 So.2d at 952). It is well settled that where the agreement is alleged to have been fraudulently induced, rather than the arbitration agreement itself, the matter is to be resolved by arbitration. Great W. Fin. Sec. Corp. v. Grandison, 701 So.2d 1202, 1203 (Fla. 5th DCA 1997); Simpson v. Cohen, 812 So.2d 588, 590 (Fla. 4th DCA 2002); Passerrello v. Robert L. Lipton, Inc., 690 So.2d 610, 611 (Fla. 4th DCA 1997). This remains so even where the alleged fraudulent misrepresentation preceded the purchase at issue. Grandison, 701 So.2d at 1203. The provision in this case references "[a]ll controversies, claims, and other matters in question arising out of or relating to this transaction or this [c]ontract." Such a broad provision often requires arbitration of tort claims, including issues of fraud. Stacy David, 845 So.2d at 306 (citing Simpson, 812 So.2d 588, and Micronair, Inc. v. City of Winter Haven, 800 So.2d 622 (Fla. 2d DCA 2001)).
King skips the language referencing "[a]ll controversies, claims, and other matters" to highlight the provision that the arbitrator may not alter contract terms or award extracontractual remedies. King claims that this restriction shows a "clear and unambiguous expression of intent to exclude claims such as ... fraud in the inducement, fraud, and negligent misrepresentation, from the scope of matters arbitrable" between King and St. Marks. We disagree. The language is, at best, ambiguous, and ambiguities regarding the scope of an arbitration agreement must be resolved in favor of arbitration. Qubty, 817 So.2d at 956. Furthermore, accepting King's characterization of the provision would require ignoring the reasonable meaning of the "all claims or controversies" language, rendering it of no effect. See Orkin Exterminating, 872 So.2d at 263. Viewed more accurately, these terms merely delineate the powers of the arbitrator and remedial limitations, rather than restrictions on the scope of arbitration. Cf. Rollins, Inc. v. Lighthouse Bay Holdings, Ltd., 898 So.2d 86, 87-89 (Fla. 2d DCA 2005) (discussing remedial limitations in an arbitration provision and compelling arbitration because the question of the provision's enforceability belonged to the arbitrator, not the court); see also PacifiCare Health Sys. v. Book, 538 U.S. 401, 405-07 & n. 2, 123 S.Ct. 1531, 155 L.Ed.2d 578 (2003) (ordering arbitration after considering remedial limitations in several arbitration agreements). King's view of the provision is inconsistent with the broadest reasonable interpretation of the arbitration agreement. See Ocwen Fin. Corp. v. Holman, 769 So.2d 481, 483 (Fla. 4th DCA 2000).
Though couched as torts, the allegations in Counts Three through Five are identical to those supporting King's breach of contract claim  namely, that St. Marks purportedly *268 failed to deliver approximately two acres of drainage rights in connection with its sale of the parcel to King. See Aztec Med. Servs. v. Burger, 792 So.2d 617, 619 (Fla. 4th DCA 2001). The alleged fraud and misrepresentation on behalf of St. Marks and Maguire can only be seen as arising out of or relating to the obligations they assumed under their contract with King; accordingly, the trial court's order concluding that King's tort claims were not arbitrable was clearly erroneous. See Five Points Health Care, Ltd. v. Alberts, 867 So.2d 520, 521 (Fla. 1st DCA 2004).
Accordingly, we REVERSE and REMAND so that the trial court may enter an order that compels arbitration of the remaining three counts of King's complaint.
SHARP, W., and MONACO, JJ., concur.
NOTES
[1] Fla. R.App. P. 9.130(a)(3)(C)(iv). This court reviews de novo a trial court's ruling on a motion to compel arbitration. Qubty v. Nagda, 817 So.2d 952, 956 (Fla. 5th DCA 2002).