THOMAS, J.
In this appeal we consider whether the terms of a real estate contract required Appellants to arbitrate their tort claim. The trial court below determined the contract’s arbitration clause required arbitration, and dismissed the complaint. We reverse, finding that Appellants’ claim was not significantly related to the contract; thus, the contract’s arbitration clause did not govern the dispute. We further hold that opinions applying the Federal Arbitration Act do not control, because the transaction at issue here does not affect interstate commerce.

*1197
FACTS

The parties’ contract was for real property owned by Appellees. Appellees advertised the property in the local Multiple Listing Service, and included the following sentence: “Wetlands study verifies No Wetlands.” Appellants agreed to the price of $253,000 for the property, and signed a uniform real estate contract. The contract included the following provision:
14. DISPUTE RESOLUTION: This Contract will be construed under Florida law. All controversies, claims, and other matters in question arising out of or relating to this transaction or this Contract or its breach will be settled as follows:
(b) All other disputes: Buyer and Seller will have 30 days from the date a dispute arises between them to attempt to resolve the matter through mediation, failing which the parties will resolve the dispute through neutral binding arbitration in the county where the Property is located. The arbitrator may not alter the Contract terms or award any remedy not provided for in this Contract .... This clause will survive closing.
(Some emphasis in original.) After closing, Appellants visited the property and became concerned that it contained wetlands. A new wetlands study ordered by Appellants revealed that wetlands covered approximately 26% of the property.
Appellants filed a complaint in March 2009, alleging the decision to buy the property was based on the advertisement, and they would not have purchased the land had they known 26% of the property was wetlands. Appellants asserted the advertisement was knowingly false when made, because before posting them advertisement Appellees possessed a study which indicated that 25% of the property was wetlands. Appellants alleged they missed a favorable housing market due to the wetlands and suffered more than $15,000 in damages because of Appellees’ fraudulent misrepresentation.
Appellees moved to dismiss the complaint, arguing the above-quoted contract language required arbitration. The trial court granted Appellees’ motion to dismiss, finding that the contract was the subject matter of the litigation, and the contract mandated arbitration.

ANALYSIS

Arbitration Not Compelled, By The Contract

Because the trial court’s dismissal is based upon the court’s construction of a contract, review is de novo. See Auchter Co. v. Zagloid, 949 So.2d 1189, 1191 (Fla. 1st DCA 2007). When ruling on a motion to dismiss, the trial court may look no further than the four corners of the complaint, and all allegations in the complaint must be accepted as true.” Nevitt v. Bonomo, 53 So.3d 1078, 1081 (Fla. 1st DCA 2010).
 Florida public policy generally favors arbitration, and all doubts regarding the scope of an arbitration clause should be resolved in favor of arbitration, when practicable. Maguire v. King, 917 So.2d 263, 266 (Fla. 5th DCA 2005); Auchter, 949 So.2d at 1195 (“[Arbitration clauses are to be given the broadest possible interpretation in order to accomplish the purpose of resolving controversies out of court.”). The natural corollary to the general rule is that the parties’ intent controls which claims are arbitrable; parties cannot be forced to submit a dispute to arbitration that they have not agreed to arbitrate. See Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999). When balancing these principles and determining *1198 whether to grant a motion to compel arbitration under either federal or state law, courts consider three elements: “(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived.” Id.
The issue here, Appellant’s fraud claim, primarily concerns the second prong. Following the Florida Supreme Court’s analysis in Seifert, we begin by examining wording of the arbitration clause. Id. at 636-37.
The Seifert court differentiated between narrow and broad arbitration provisions. Id. Narrow arbitration clauses are those that require disputes “arising out of’ or “under” a contract to arbitration. Id. When a narrow arbitration clause is present, arbitration is limited to those claims that have a direct relationship to the contract’s terms or provisions, or directly relate to contract interpretation or performance. Id. Broad arbitration provisions are those that require claims “arising out of or relating to” a contract to be arbitrated. Id. “The test for determining arbitrability of a particular claim under a broad arbitration provision is whether a ‘significant relationship’ exists between the claim and the agreement containing the arbitration clause, regardless of the label attached to the legal dispute.” Id. at 637-38 (quoting Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 93-94 (4th Cir.1996)).
Based on the court’s instruction in Seifert, we hold the arbitration provision in this case is broad because, according to the contract, it requires “[a]ll controversies, claims, and other matters in question arising out of or relating to this transaction or this Contract or its breach” to be arbitrated. Next, we must determine whether Appellants’ fraud claim has a significant relationship to the real estate contract.
This “contractual nexus” question is not answered in the affirmative simply because the dispute would not have arisen but for the contractual relationship. See Seifert, 750 So.2d at 638. Appellants and Appellees obviously would not be in this adverse situation had they not agreed to the contract; however, the claim at the center of the dispute arose from a general duty owed under common law, not from the contract. “[F]or a tort claim to be considered ‘arising out of or relating to’ an agreement, it must, at a minimum, raise some issue the resolution of which requires reference to or construction of some portion of the contract itself.” Id.
Like the case sub judice, the parties in Seifert signed a real estate contract containing a broad arbitration provision. Id. at 635. U.S. Home Corporation built the Seiferts’ home and placed the air conditioning handling unit in the garage. Id. Mr. Seifert was killed when the air conditioner picked up carbon monoxide emissions from a car left running in the garage and distributed carbon monoxide in the home. Id.
The Seifert court agreed that the wrongful death action in that case was predicated on a common-law negligence theory unrelated to the rights and obligations created by the contract. Id. at 640. The absence of any language concerning the parties’ rights in the event of a personal injury arising out of tortious conduct created an ambiguity to be construed against the drafting party. Id. at 641. Like the contract here, the contract in Seifert specifically anticipated arbitration of disputes arising from interpretation, performance, and breach of contract, but not tort claims. Id. Finally, the Seifert court determined the factual allegations in the wrongful death claim were not dependent on U.S. Home Corporation’s contractual duties; *1199 the builder would have been liable to anyone harmed by its dangerous design. Id.
Applying the supreme court’s analysis to this case, we hold that Appellants’ fraud claim is not significantly related to the contract. Appellants’ common-law fraud claim does not require reference to or construction of the contract, nor does it invoke any contractual provision; Appellants’ arguments rest solely on Appellees’ allegedly false advertisement. The Florida Supreme Court has, in other areas of contract law, distinguished between tort claims that lie outside the contract. See HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So.2d 1238, 1239-40 (distinguishing fraudulent inducement from breach of contract for purposes of economic loss doctrine). The court further agreed that “ ‘a suit on a contract and a suit for fraud inducing the contract are two different causes of action with separate and consistent remedies.’ ” Id. (quoting Bankers Trust Co. v. Pacific Employers Ins. Co., 282 F.2d 106, 110 (9th Cir.1960)).
The contract here is incidental to the dispute, because Appellants theoretically could have raised their fraud claim even before the contract was signed if Appellants detrimentally relied on Appellees’ advertisement.[1] In addition, the arbitration clause in the contract expressly contemplates remedies in case of breach by either party, but it specifically prohibits an arbitrator from awarding remedies not provided in the contract. None of the contractual language suggests the parties contemplated that intentional fraud claims would be resolved under the agreement.
Appellees rely on Beazer Homes Corp. v. Bailey, 940 So.2d 453, 455 (Fla. 5th DCA 2006), in support of their argument that the fraud claim here bore a significant relationship to the contract. Beazer Homes, however, did not result in an opinion of the Fifth District, as two judges on the panel concurred in result only. See Rowe v. Winn-Dixie Stores, Inc., 714 So.2d 1180, 1181 (Fla. 1st DCA 1998) (noting that where one member of an appellate panel concurs in result only, and another panel member dissents, there is no majority and the opinion does not stand as precedent), disapproved on other grounds by Owens v. Publix Supermarkets, Inc., 802 So.2d 315 (Fla.2001); see also Tedder v. State, 12 So.3d 197 (Fla.2009) (holding no majority opinion existed from which review could be taken where second judge concurred in result only with written opinion, and third judge concurred in part and dissented in part from written opinion). See generally State v. Leveson, 147 So.2d 524 (Fla.1962) (explaining district court judgment reversing trial court should be supported by a majority opinion for trial court’s guidance on remand). Thus, we decline to discuss that judgment in our analysis.

Federal Arbitration Act Is Not Applicable

Appellees rely on Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006), in which the United States Supreme Court reiterated that the Federal Arbitration Act requires “claims of fraud in the inducement of the contract generally” to be submitted to arbitration; claims alleging the agreement to arbitrate was fraudulently *1200 induced are properly submitted to the courts. 546 U.S. at 444-45, 126 S.Ct. 1204 (citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)). Thus, we acknowledge we would be forced to affirm if the parties’ dispute were governed by the Federal Arbitration Act. See Buckeye, 546 U.S. at 446, 126 S.Ct. 1204 (holding federal arbitration law applies in state and federal courts); see also Kaplan v. Divosta Homes, L.P., 983 So.2d 1208, 1210-11 (Fla. 2d DCA 2008) (applying Buckeye where contract expressly provided Federal Arbitration Act controlled).
Application of the Federal Arbitration Act in state court is premised on Congress’ power to regulate interstate commerce. See Prima Paint, 388 U.S. at 404, 87 S.Ct. 1801. A transaction involves commerce under the Federal Arbitration Act if it “in fact” affects interstate commerce. Allied-Bruce Terminix Co. v. Dobson, 513 U.S. 265, 280, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). Here, the dispute does not affect interstate commerce because it involves the sale of one parcel of real estate in Panama City, Florida. Regarding the sale of real estate, the phrase lex loci rei sitae applies. See Kyle v. Kyle, 128 So.2d 427, 429 (Fla. 2d DCA 1961) (explaining an instrument conveying title in real property, which has its situs within a state, is governed by the law of the state). Several courts have reached the same conclusion: the sale of real estate is inherently intrastate; thus, the Federal Arbitration Act does not automatically govern arbitration agreements in contracts for the sale of real property. See Saneii v. Robards, 289 F.Supp.2d 855, 858-59 (W.D.Ky.2003); SI V, LLC v. FMC Corp., 223 F.Supp.2d 1059 (N.D.Cal.2002); Cecala v. Moore, 982 F.Supp. 609 (N.D.Ill.1997); Aronov Realty Brokerage, Inc. v. Morris, 838 So.2d 348, 356-60 (Ala.2002); see also O’Keefe Architects, Inc. v. CED Constr. Partners, Ltd., 944 So.2d 181, 184 (Fla.2006) (noting parties agreed Florida Arbitration Code applied in lieu of Federal Arbitration Act where two Florida corporations entered into agreement to construct condominium). This is true regardless of whether the transaction involves out-of-state purchasers. See id. More complex transactions related to real estate may involve interstate commerce. See Allied-Bruce, 513 U.S. at 268, 115 S.Ct. 834 (discussing lifetime termite prevention plan to protect personal home); Jansen Prop. of Fla., Inc. v. Real Estate Assoc., Ltd. VI, 674 So.2d 210, 212 (Fla. 4th DCA 1996) (holding real estate refinancing agreement involving diverse escrow corporations arbitrable under federal law). Because state law governs the parties’ contract, we must follow the Florida Supreme Court’s controlling precedent in Seifert.

Conflict Certified

We next address the Fifth District’s decision in Maguire v. King, 917 So.2d 263, 266 (Fla. 5th DCA 2005), as that decision could be read to support Appellees’ position. The plaintiffs in Maguire agreed to purchase property and relied upon a representation by the seller’s representative that the transaction would include two acres of drainage rights. Id. at 264. Important to our decision here, the parties in Maguire executed a written addendum to their real estate contract which included the drainage rights. Id. After closing, the plaintiffs discovered the seller previously transferred one acre of the drainage rights in a different transaction. Id. The plaintiffs sued for breach of contract in two counts, and three counts of fraud in the inducement, fraud, and negligent misrepresentation, all based on the same factual allegations. Id. at 265. Reasoning that the tort claims were “nonsensical when divorced from the contractual obligation” *1201 to deliver two acres of drainage rights, the court reversed and remanded so that the trial court could impose arbitration. Id. at 266-67. Because the parties’ dispute was directly related to duties arising from the contract, Maguire is distinguishable from this appeal. As that decision notes, “Though couched as torts, the [tort] allegations ... are identical to those supporting King’s breach of contract claim.” Id. at 267. To the extent that the decision in Maguire cannot be distinguished, we certify conflict.
Addressing the dissent’s position regarding Appellants’ contractual requirement to engage in due diligence by conducting an environmental evaluation, this does not require arbitration of Appellants’ fraudulent inducement claim, which is based on Appellees’ allegedly false advertisement. Appellants allege that Appellees knowingly concealed information that the property contained wetlands, despite them advertisement proclaiming “Wetlands Study Verifies No Wetlands.” Appellants allege an intentional tort, not negligence; thus, the contractual provision imposing a due diligence requirement may be admissible at trial regarding damages, but it does not compel arbitration.

CONCLUSION

Appellants’ fraud claim is not subject to arbitration because it was not significantly related to or dependent upon any duties or obligations created by the contract.
REVERSED and REMANDED; CONFLICT CERTIFIED.
VAN NORTWICK, J., concurs; MARSTILLER, J., dissents with opinion.

. "The essential elements to establish a claim for fraudulent inducement are: (1) a false statement of material fact; (2) the maker of the false statement knew or should have known of the falsity of the statement; (3) the maker intended that the false statement induce another’s reliance; and (4) the other party justifiably relied on the false statement to its detriment.” Rose v. ADT Sec. Servs., Inc., 989 So.2d 1244, 1247 (Fla. 1st DCA 2008).