LEWIS, J.
This case is before the Court for review of the decision of the First District Court of Appeal in Shakespeare Foundation, Inc. v. Jackson, 61 So.3d 1194 (Fla. 1st DCA 2011), and concerns whether an action for fraud is within the scope of an arbitration provision in a contract for the purchase and sale of real property. The First District certified.that its decision is in conflict with the decision of the Fifth District Court of Appeal in Maguire v. King, 917 So.2d 263 (Fla. 5th DCA 2005). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.
FACTS
In 2006, George Jackson, Kerry Jackson, and the Jackson Realty Team, Inc. (“the Jacksons”) decided to sell the real property that is the subject of the contract which forms the basis of this dispute. They posted the following advertisement in the Bay County Multiple Listing Service:
This is a Great affordable housing project. Estimate from North Bay Engineering is $17,500 to get you to Dev order stage. Topography and boundary survey completed recently by Dragon Surveying to be included in price. *590 Property is 165' on Everitt Avenue and 396' deep, totally cleared and filled except for 10' around fence line. Zoning per City of PC is MU2, Mixed Use 2, Multi Family duplex, triplex or quadra-plex be built on the property. Recently tapped into Panama City Water and Sewer, with new commercial grade pump/lift station on site. Local Engineering company has platted 10 duplexes could fit 6 4 plexes. Zoned 20 units per acre or 30 units total. Wetlands study verifies No Wetlands. One of Sellers is Licensed Fl. Realtor.
(Emphasis added.) When the Jacksons posted this advertisement, they had in their possession a Property Report Land Use Planning Analysis, which established, contrary to the advertisement, that 25% of the subject property constituted wetlands.
The Jacksons and the Respondents — the Shakespeare Foundation, Inc., and the Herd Community Development Corp. (collectively the “Shakespeare Foundation” or the “Foundation”) — entered into negotiations for the purchase of the real property. During the negotiations, the Shakespeare Foundation advised the Jacksons that they intended to develop the property into a twenty-seven unit low-income housing development. The Shakespeare Foundation relied on the representations set forth in the advertisement and entered into a contract with the Jacksons for the purchase of the real property.
In July 2007, after the Shakespeare Foundation tendered full payment to the Jacksons for the property, the Foundation held an onsite meeting with a builder and engineer. The builder reported that the property might contain wetlands. The Shakespeare Foundation hired an engineering firm to perform a wetlands delineation[1] on the property. The firm provided the Shakespeare Foundation with a report that established that 0.39 acres of the 1.5 acre property was wetlands rendering it unbuildable. The wetlands constituted 26% of the entire tract which was equal to nine of the twenty-seven units that the Shakespeare Foundation had intended to develop.
The Shakespeare Foundation thereafter filed an action against the Jacksons for fraudulent misrepresentation. In the complaint, it was alleged that in the advertisement for the sale of the property, the Jacksons knowingly and falsely misrepresented that the property had no wetlands and that the property was suitable for the construction of thirty units, and the Shakespeare Foundation relied on these misrepresentations when entering into the contract. The Shakespeare Foundation contended that if it had been known that 26% of the property constituted wetlands, the property would have never been purchased because that percentage of wetlands made use of the property “economically unfeasible.” The Shakespeare Foundation also asserted that the existence of the wetlands led to a delay in project development. It was alleged that this delay of time caused the Foundation to miss a favorable real estate market in which the subject property could have been sold, and placed them in one of the worst real estate markets in the modern era.
The Jacksons moved to dismiss the Shakespeare Foundation’s action. They asserted that the fraud claim arose out of, and was related to, the contract and, therefore, fell within the arbitration provi *591 sion of the contract. The arbitration provision in the contract, titled “Default and Dispute Resolution,” states:
14. DISPUTE RESOLUTION: This Contract will be construed under Florida law. All controversies, claims, and other matters in question arising out of or relating to this transaction or this Contract or its breach will be settled as follows:
(a) Disputes concerning entitlement to deposits made and agreed to be made: Buyer and Seller will have 30 days from the date conflicting demands are made to attempt to resolve the dispute through mediation. If that fails, Escrow Agent will submit the dispute, if so required by Florida law, to Escrow Agent’s choice of arbitration, a Florida court or the Florida Real Estate Commission. Buyer and Seller will be bound by any resulting award, judgment, or order.
(b) All other disputes: Buyer and Seller will have 30 days from the date a dispute arises between them to attempt to resolve the matter through mediation, failing which the parties will resolve the dispute through neutral binding arbitration in the county where the Property is located. The arbitrator may not alter the Contract terms or award any remedy not provided for in this Contract. ... This clause will survive closing.
(Emphasis added.) The Jacksons contended that the contractual provisions required the Shakespeare Foundation to submit the fraud claim to binding arbitration. It was asserted that this provision required binding arbitration of the fraud claim because the scope of the contractual provision included all claims “arising out of or relating to this transaction or this Contract.” (Emphasis added.)
The trial court subsequently granted the Jacksons’ motion to dismiss, concluding that the arbitration provision in the contract required that the parties submit the fraud claim to arbitration. The Shakespeare Foundation appealed the judgment of dismissal to the First District Court of Appeal. See Shakespeare Found., 61 So.3d at 1196.
Decision of the First District
On appeal, the First District examined whether the trial court erred in dismissing the action. See id. at 1197-98. The crux of the appellate court’s review was whether the fraud claim of the Shakespeare Foundation was within the scope of the arbitration provision of the contract. See id. at 1198.
The district court below concluded that the arbitration provision of the subject contract was broad in scope because its terms were to apply to all claims or controversies “arising out of or relating to” the contract. See id. (concluding that the “or relating to” language rendered the arbitration provision broad in scope). The district court then held that a claim falls within a broad arbitration provision if a “significant relationship” — i.e., a “contractual nexus” — exists between the contract and the claim. See id.
The district court, however, determined that the fraud claim here did not come within the broad scope of the arbitration provision because the fraud claim arose from a general duty established under the common law; not from an obligation arising under the contract. See id. at 1199. More specifically, the district court concluded that the fraud claim did not significantly relate to the contract because determination of this claim required neither reference to nor construction of the contract. See id. Rather, the district court held that the claim rested on the alleged false statements in the published adver *592 tisement and the general common law duty not to make fraudulent misrepresentations. See id. The court further determined that the fraud claim was not within the scope of the arbitration provision because the contract was only incidental to the dispute since the Shakespeare Foundation had the ability, as well as the right, to assert a fraud claim before the parties executed the contract. See id. The district court also concluded that the express language of the contract evinced an intent that a fraud claim would not be litigated under the contract and its arbitration provision. See id. Specifically, the district court held that the express language of the contract only contemplates remedies for a breach of contract action, and prohibits an arbitrator from providing a remedy not specifically provided for in the provisions of the contract, such as a remedy in the event of a tort or fraud action. See id.
The First District ultimately held that the action based on fraud was not a dispute subject to arbitration under the contract, reversed the trial court’s order, and certified conflict with the decision of the Fifth District in Maguire. See id. at 1201.
Conflict Case
In Maguire, a buyer entered into a contract to purchase real property from the sellers. See 917 So.2d at 264. The sellers represented that the real property would include two acres of drainage rights. See id. The parties articulated and reduced those rights into written form in an addendum to the purchase contract. See id. After the parties closed on the contract, the buyer discovered that the sellers had previously transferred one acre of the agreed upon two acres of drainage rights in a previous sale of a different parcel. See id. The buyer filed an action against the sellers for specific performance, breach of contract, fraud in the inducement, fraudulent misrepresentation, and negligent misrepresentation. See id. at 265. Pursuant to an arbitration provision in the contract that is identical to the provision at issue in this case, the sellers moved to dismiss and compel arbitration. See id. The trial court granted the motion .with regard to the specific performance and contract claims, but denied the motion to compel arbitration with regard to the fraud and negligent misrepresentation claims. See id. The trial court held that the arbitration provision did not apply to those claims because the claims were founded in tort law. See id.
On appeal, the Fifth District reversed and remanded, directing the trial court to compel arbitration of the fraud and misrepresentation claims. See id. at 268. The appellate court held that a contractual nexus existed between the misrepresentation claims and the contract because the contract contained a broad arbitration provision, and the buyer based the misrepresentation claims on duties created by the contractual relationship between the parties. See id. at 266 (“[T]he tort claims are nonsensical when divorced from the contractual obligation to deliver approximately two acres of drainage rights.”). According to the appellate court, the fraudulent misrepresentation and fraud in the inducement claims arose from conduct pertaining to the agreement — i.e., the misrepresentation regarding the drainage rights which had been specifically incorporated into the written contract. See id. at 267.
ANALYSIS
Standard of Review
This Court reviews de novo a trial court’s ruling on a motion to dismiss. See Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co. Ltd., 752 So.2d 582, 584 (Fla.2000). This Court’s review of an order dismissing an action and compelling arbi *593 tration is limited to the four corners of the complaint and its incorporated attachments. See Minor v. Brunetti, 43 So.3d 178, 179 (Fla. 3d DCA 2010). The purpose of the review is to test the legal sufficiency of the complaint; not to determine factual issues. See id. All well pled allegations in the complaint are taken as true, with all reasonable inferences to be construed in favor of the nonmoving party. See id. The issue in this case also concerns ,a matter of contract interpretation, which is a question of law subject to de novo review. See Chandler v. Geico Indem. Co., 78 So.3d 1293, 1296 (Fla.2011).
Applicable Rules of Law
Generally, the three fundamental elements that must be considered when determining whether a dispute is required to proceed to arbitration are: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived. See Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999). Arbitration provisions are contractual in nature and remain a matter of contractual interpretation. See id. The intent of the parties to a contract, as manifested in the plain language of the arbitration provision and contract itself, determines whether a dispute is subject to arbitration. See id. Courts generally favor such provisions, and will try to resolve an ambiguity in an arbitration provision in favor of arbitration. See id.; see also Qubty v. Nagda, 817 So.2d 952, 956 (Fla. 5th DCA 2002).
Two basic types of arbitration provisions have emerged: (1) provisions with language and application narrow in scope, and (2) provisions with language and application broad in scope. See Seifert, 750 So.2d at 636-37. An arbitration provision that is considered to be narrow in scope typically requires arbitration for claims or controversies “arising out of’ the subject contract. See id. at 636. This type of provision limits arbitration to those claims that have a direct relationship to a contract’s terms and provisions. See id. In contrast, an arbitration provision that is considered to be broad in scope typically requires arbitration for claims or controversies “arising out of or relating to ” the subject contract. See id. at 637 (emphasis added). The addition of the words “relating to” broadens the scope of an arbitration provision to include those claims that are described as having a “significant relationship” to the contract — regardless of whether the claim is founded in tort or contract law. See id. at 637-38.
A “significant relationship” between a claim and an arbitration provision does not necessarily exist merely because the parties in the dispute have a contractual relationship. See id. Rather, a significant relationship is described to exist between an arbitration provision and a claim if there is a “contractual nexus” between the claim and the contract. See id. at 638. A contractual nexus exists between a claim and a contract if the claim presents circumstances in which the resolution of the disputed issue requires either reference to, or construction of, a portion of the contract. See id. More specifically, a claim has a nexus to a contract and arises from the terms of the contract if it emanates from an inimitable duty created by the parties’ unique contractual relationship. See id. at 639. In contrast, a claim does not have a nexus to a contract if it pertains to the breach of a duty otherwise imposed by law or in recognition of public policy, such as a duty under the general common law owed not only to the contracting parties but also to third parties and the public. See id.
For example, in Seifert, this Court examined whether a negligence claim in a *594 wrongful death action was within the scope of a broad arbitration provision in a contract for the sale and purchase of real property. See 750 So.2d at 635. The Court held that a significant relationship did not exist between the negligence claim and the contract, and, as a result, the claim did not fall within the scope of the arbitration provision. See id. at 642.
The wrongful death action in that case arose after a wife and husband purchased a home. See id. at 635. After the couple moved into the home, the husband died inside the home due to the inhalation of carbon monoxide. See id. at 635. This death occurred because an air conditioner located in the garage area captured carbon monoxide emissions from a running car engine in the garage and transmitted the toxic emissions into the living area of the home. See id. The wife, as personal representative of her husband’s estate, filed a wrongful death action against the sellers of the home for strict liability, negligence, and breach of express and implied warranties. See id. The sellers moved to compel arbitration with regard to the negligence-type claims, arguing that although the claims were founded in tort law, all of the claims were within the scope of the arbitration provision in the purchase contract:
13. ARBITRATION. Any controversy or claim arising under or related to this Agreement or to the Property (with the exception of “consumer products” as defined by the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act, 15 U.S.C. Section 2301 et seq., and the regulations promulgated under the Act) or with respect to any claim arising by virtue of any representations alleged to have been made by the Seller or Seller’s representative, shall be settled and finally determined by mediation or binding arbitration as provided by the Federal Arbitration Act (9 U.S.C. Section 1 — 14) and similar state statutes and not by a court of law.
Id. (emphasis added).
This Court disagreed with the sellers. See id. at 640-42. We held that the negligence-type claims did not have a significant relationship to the contract because they were founded in the tort of common law negligence and were unrelated to any unique legal duties imposed under the contract, i.e., the actions were predicated on the sellers’ breach of general common law duties of care owed to the injured parties; not on a breach of a unique duty imposed under the contract. See id. The holding was supported by reference to the total absence of any mention of rights regarding personal injury or negligence actions in the contract. See id. We concluded that the absence of such language further signified that the parties did not intend for the arbitration provision to apply to the negligence-type claims. See id. at 641-42.
Instant Case
We hold that the action here based on fraud is within the scope of the arbitration provision because it has a clear contractual nexus with, and thus a significant relationship to, the contract. This relationship exists because: (1) the fraud claim is inextricably intertwined with both the circumstances that surrounded the transaction from which the contract emanated and the contract itself; and (2) resolution of the fraud claim requires the construction and consideration of duties arising under the contract.
In this case, as in Seifert, the contract at issue has a broad arbitration provision because it subjects “[a]ll controversies, claims, and other matters in question arising out of or relating to this transaction or this Contract or its breach” to binding arbitration. (Emphasis added.) See Seifert, 750 So.2d at 637 (holding that an arbitration provision which contains the *595 phrase “arising from or relating to” is considered a broad arbitration provision because of the addition of the “or relating to” language). However, in Seifert, this Court concluded that the negligence-type claims at issue did not have a significant relationship to a contract that had a broad arbitration provision because a contractual nexus did not exist between the claims and the contract. See id. at 640 — 42. We held that this was because the claims did not require some reference to or construction of the contract, and pertained to the duty of care imposed by general common law in recognition of public policy. See id. at 637, 640-41.
In contrast to Seifert, here, although the fraud claim is based on common law fraud,[2] it is inextricably intertwined with both the circumstances that surrounded the transaction from which the contract emanated and the contract itself. As alleged in the complaint as a basis for the action, the genesis of the fraud claim is that the Jacksons knowingly misrepresented facts in the published advertisement that the subject property did not contain wetlands when, in fact, the Jacksons knew of the wetlands’ existence through their own previous study which established that wetlands constituted 25% of the property. The Shakespeare Foundation allegedly relied on the misrepresentations in the published advertisement and entered into the contract. The subsequent damages the Shakespeare Foundation allegedly incurred arose from the contract itself, i.e., by entering into the contract, the Foundation suffered the economic damage of owning property it was unable to develop or sell.
Therefore, unlike the negligence-type claims in Seifert, the fraud claim at issue here is inextricably intertwined with both the transaction from which the contract arose and the contract itself — the reliance element of the claim emanates from the transaction from which the contract arose, and the damages element of the claim arises from the execution and existence of the contract itself. Accordingly, the fraud claim has a significant relationship to the contract and is within the scope of the contract’s broad arbitration provision.
Furthermore, the resolution of the fraud claim requires reference to and construction of both the contract’s arbitration provision and its “as is” provision.[3] In particular, the arbitration provision of the contract limits the remedies for disputes arising from the contractual relationship to those provided in the contract, stating that the “arbitrator may not alter the Contract terms or award any remedy not provided for in this Contract.” The express remedies in the contract are limited *596 to the parties’ rights in the event of a default, and the contract does not mention the parties’ remedial rights in the event of a fraud or tort action.
This limitation of remedies in the arbitration provision may have an impact on the contract and the arbitration provision. See Hialeah Auto., LLC v. Basulto, 22 So.3d 586, 590-91 (Fla. 3d DCA 2009) (holding as unconscionable an arbitration provision that resulted in the waiver of common law and statutory remedies). However, we do not resolve such questions here as they were not presented for review nor addressed by the district court below. These are issues that remain for consideration below as we address only the initial question concerning whether the arbitration clause may apply.
The adjudication of the fraud action may also require reference to and the construction of the “as is” provision of the contract. More specifically, the resolution of the fraud claim may require a determination as to whether that claim is negated due to an election of the “Feasibility Study” option under the “as is” provision of the contract. By electing this option, the Shakespeare Foundation may have accepted the property “as is” for the intended use and waived any claims. See Gilman v. Butzloff, 155 Fla. 888, 22 So.2d 263, 265 (1945) (“A party may waive any right to which he is legally entitled, whether secured by contract, conferred by statute, or guaranteed by the Constitution.”). Although the Shakespeare Foundation’s election of the option may not result in a waiver of the fraud claim, whether this argument is viable will require reference to, and the construction of, the contract and all other facts. See, e.g., D & M Jupiter Inc. v. Friedopfer, 853 So.2d 485, 488-89 (Fla. 4th DCA 2003) (citing Oceanic Villas Inc. v. Godson, 148 Fla. 454, 4 So.2d 689, 690 (1941)) (concluding that although a claim for fraudulent inducement of a contract may vitiate an “as is” provision, such a determination requires an examination of the contract and the circumstances surrounding its execution, and a resolution of whether a fraudulent representation occurred).
The decision in Maguire is also consistent with our holding. There, the parties entered into a contract for the sale of real property that contained an arbitration provision identical to the provision we consider in this case. There, as here, the aggrieved party filed an action for fraud. In relying on Seifert, the Fifth District in Maguire held that a contractual nexus existed between the fraud claims and the contract because the contract contained a broad arbitration provision, and the buyer based the fraud claims on misrepresentations regarding the property that was the subject of the contract, which were relied upon by the buyer in executing the contract. See Maguire, 917 So.2d at 266. Similarly, in this case, a contractual nexus exists between the fraud claim and the contract because the Jacksons allegedly misrepresented facts in the published advertisement concerning the property that was the subject of the contract, and the Shakespeare Foundation allegedly relied on those misrepresentations in entering into the contract. Therefore, in both Ma-guire and this case, the fraud claims at issue had a significant relationship to the contracts and were within the scope of the respective contracts’ arbitration provisions.
Lastly, decisions from the United States Supreme Court and other state courts support the conclusion that the fraud claim here is within the scope of the broad language of the arbitration provision at issue. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 397-403, 406, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (holding that a claim for fraudulent misrepresenta *597 tion was within the scope of a contract that required arbitration for “[a]ny controversy or claim arising out of or relating to this Agreement or the breach thereof’); Parfi Holding AB v. Mirror Image Internet, Inc., 817 A.2d 149, 155 (Del.2002) (holding that a fraud claim was within the scope of a broad arbitration provision that required the contracting parties to arbitrate “any dispute, controversy, or claim arising out of or in connection with” the contract); Green Tree Agency, Inc. v. White, 719 So.2d 1179, 1180 (Ala.1998) (holding that a claim of fraud in the inducement was within an arbitration clause that required arbitration for “[a]ll disputes, claims, or controversies arising from or relating to this Contract or the relationships which result from this Contract”); Quirk v. Data Terminal Sys., Inc., 379 Mass. 762, 400 N.E.2d 858, 860-61 (1980) (holding that a claim for fraud in the inducement was within the scope of an arbitration provision that required arbitration for all claims and disputes “arising out of, or relating to, this Contract or the breach thereof’); Flower World of Am., Inc. v. Wenzel 122 Ariz. 319, 594 P.2d 1015, 1016-17, 1019 (App.1978) (holding that a fraud claim was within the scope of an arbitration provision that required arbitration for “any controversy, dispute, claim or question arising out of, in connection with, or in relation to this Agreement or its interpretation, performance, or any breach thereof’).
CONCLUSION
Accordingly, we conclude that the fraud action here filed by the Shakespeare Foundation has a contractual nexus with, and a significant relationship to, the contract between the Shakespeare Foundation and the Jacksons and is, as a general principle, within the scope of the contract’s broad arbitration provision. We do not determine nor do we address any other issue beyond this threshold determination. We, therefore, quash the decision below, remand for further consideration, and approve the decision in Maguire to the extent that it is consistent with this opinion.
It is so ordered.
PARIENTE, QUINCE, LABARGA, and PERRY, JJ., concur.
POLSTON, C.J., and CANADY, J., concur in result.

. A "wetlands delineation” is "the act of establishing the boundary between wetlands and uplands (or non-wetlands).” The Wetlands Regulation Center, Wetlands Delineation Under the Clean Water Act, http://www. wetlands.com/regs/tlpge02h.htm (last visited January 15, 2013).

. An aggrieved party proves common law fraud by establishing that: (1) the opposing party made a misrepresentation of a material fact, (2) the opposing party knew or should have known the falsity of the statement, (3) the opposing party intended to induce the aggrieved party to rely on the false statement and act on it, and (4) the aggrieved party relied on that statement to his or her detriment. See, e.g., Butler v. Yusem, 44 So.3d 102, 105 (Fla.2010) (listing the elements of fraudulent misrepresentation).

. In the contract, the Shakespeare Foundation elected the following provision:
(1) Feasibility Study: Buyer will, at Buyer's expense and within 30 days from Effective Date ("Feasibility Study Period”) determine whether the Property is suitable, in Buyer’s sole and absolute discretion, for use. Buyer will deliver written notice to Seller prior to the expiration of the Feasibility Study Period of Buyer’s determination of whether or not the Property is acceptable. Buyer’s failure to comply with this notice requirement will constitute acceptance of the Property as suitable for Buyer’s intended use in its "as is " condition.
(Emphasis added.)