# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————————

Case No. 6D23-985
Lower Tribunal No. 21-CA-006331

———————————————————

CHRISTOPHER and TAMMY COSTELLO as Personal Representative of the ESTATE of RYAN COSTELLO, deceased,

Appellants,

v.

DAVID OLSON, M.D.,

Appellee.

———————————————————

Appeal pursuant to Fla. R. App. P. 9.130 from the Circuit Court for Lee County.
Alane Laboda, Judge.

December 8, 2023

MIZE, J.

Appellants Christopher and Tammy Costello ("Plaintiffs"), as personal representatives of the estate of Ryan Costello ("Costello), appeal the trial court's order granting Appellee David Olson's ("Dr. Olson") motion to stay and compel

arbitration. We reverse the trial court's order because Plaintiffs' claims are not subject to an arbitration agreement.[1]

## Background and Procedural History

According to Plaintiffs' Complaint below, Costello was a professional baseball player who played for two Florida-based minor league affiliates of the Minnesota Twins (the "Twins"). In March 2019, the Twins arranged for Costello to undergo a medical evaluation in Ft. Myers to determine if he was medically fit to participate in the Twins' spring training program. Dr. Olson, a sports medicine physician, performed the evaluation. As part of the evaluation, Costello underwent a series of tests, including an electrocardiogram ("EKG"). An EKG measures the electrical signals in the heart and is designed to detect cardiac abnormalities. Costello's EKG revealed such abnormalities and indicated that Costello required further evaluation before he could be cleared to participate in strenuous activities. Those abnormalities were later determined to be Wolff-Parkinson-White syndrome, a cardiac condition that is treatable but that can make participating in vigorous physical activity dangerous and potentially fatal. Despite Costello's EKG showing clear abnormalities that required further evaluation and that should have caused Dr. Olson to conclude that Costello had Wolff-Parkinson-White syndrome, Dr. Olson

---

[1] This case was transferred from the Second District Court of Appeal to this Court on January 1, 2023.

2

marked Costello's health report as "Normal" with "No Further Action Necessary." After Dr. Olson cleared Costello for continued participation in baseball, Costello returned to spring training in Ft. Myers.

Later in 2019, the Twins sent Costello to New Zealand to play in a developmental league called the Australian Baseball League. On the morning of November 19, 2019, Costello was found dead in his hotel room from a cardiac arrythmia. An autopsy examination found cardiac abnormalities that were consistent with Wolff-Parkinson-White syndrome.

Plaintiffs initiated the Florida medical malpractice pre-suit screening process under Chapter 766, Florida Statutes, by sending Dr. Olson a notice of intent to initiate litigation. Dr. Olson participated in the pre-suit process, exchanged information and correspondence with Plaintiffs' counsel, and ultimately formally denied the claim.

After Dr. Olson denied the claim, Plaintiffs filed the below lawsuit against Dr. Olson asserting a negligence claim and other claims based on medical malpractice. Plaintiffs alleged that Dr. Olson did not appropriately diagnose Costello's Wolff-Parkinson-White syndrome, did not inform Costello that the EKG was abnormal, did not advise Costello that he should be evaluated by a cardiologist, and did not suggest follow-up testing or evaluation.

In response to Plaintiffs' Complaint, Dr. Olson filed a motion to stay and compel arbitration which argued that Plaintiffs' claims were subject to arbitration pursuant to a Minor League Uniform Player Contract ("Player Contract") signed by Costello that expressly incorporated a Major League Agreement ("MLA") that contained an arbitration provision. Plaintiffs opposed the motion on two grounds: (1) Plaintiffs' lawsuit did not fall within the scope of the arbitration provision contained in the MLA; and (2) Dr. Olson waived any right to demand arbitration. The trial court granted the motion, and this appeal followed.

## Legal Standard

A trial court's ruling on a motion to compel arbitration is reviewed de novo. *Murphy v. Courtesy Ford, L.L.C.*, 944 So. 2d 1131, 1134 (Fla. 3d DCA 2006). "A trial court's interpretation of a contract is a matter of law and is thus subject to de novo review." *Rose v. Steigleman*, 32 So. 3d 644, 645 (Fla. 1st DCA 2010); *see also Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013).

"The cardinal rule of contractual construction is that when the language of the contract is clear and unambiguous, the contract must be interpreted and enforced in accordance with its plain meaning." *Cape Coral Loan Acquisitions, LLC v. 924 Del Prado, LLC*, 48 Fla. L. Weekly D1968 (Fla. 6th DCA Oct. 6, 2023) (quoting *Columbia Bank v. Columbia Devs., LLC*, 127 So. 3d 670, 673 (Fla. 1st DCA 2013)). "[W]hen the language of the contract is clear and unambiguous, there is no need to

4

arrive at a reasonable interpretation. Instead, we must apply the text as written."

*Corp. Creations Int'l, Inc. v. Marriott Int'l, Inc.*, 276 So. 3d 36, 38 (Fla. 4th DCA 2019).

### Analysis

The Player Contract expressly incorporated the MLA and provided that the Player Contract is subject to and governed by the MLA. The MLA contained an arbitration provision that read as follows:

> All disputes and controversies related in any way to professional baseball between Clubs or between a Club(s) and any Major League Baseball entity(ies) (including in each case, without limitation, their owners, officers, directors, employees and players), other than those whose resolution is expressly provided for by another means in this Constitution, the Major League Rules, the Basic Agreement with the Major League Baseball Players Association, or the collective bargaining agreement with any representative of the Major League umpires, shall be submitted to the Commissioner, as arbitrator, who, after hearing, shall have the sole and exclusive right to decide such disputes and controversies and whose decision shall be final and unappealable.

Thus, by its plain terms, the arbitration provision applies to disputes that are related in any way to professional baseball *and* that are between either: (1) two or more Clubs; or (2) one or more Club(s) and one or more Major League Baseball entity(ies). Both "Clubs" and "Major League Baseball entity(ies)" include their respective owners, officers, directors, employees and players.[2] It is undisputed that

---

[2] The use of the language "in each case" in the parenthetical makes clear that the parenthetical applies to both Clubs and Major League Baseball entities. *See Wolf*

5

that the Twins are a Club.  The MLA includes a list of the thirty Major League

Baseball Clubs, one of which is the Twins.  The trial court found that Dr. Olson was

an employee of the Twins and performed his services for Costello in that capacity.

Neither party challenges that finding on appeal.[3]

Thus, as found by the trial court, this is a dispute between a player of a Club

and an employee of the same Club.  It is an intra-Club dispute.  By its plain terms,

the arbitration provision does not encompass Plaintiffs' claims.  This is not a dispute

between two or more Clubs.  This is not a dispute between a Club (or employees or

players of a Club) on the one side and a Major League Baseball entity (or employees

---

*v. Rawlings Sporting Goods Co.*, 2010 WL 4456984 at \*2 (S.D.N.Y. 2010) ("A logical reading of the clause dictates that the opening words in the parentheses, 'including in each case,' must refer to each of the cases previously identified, including, e.g., disputes 'between Clubs.' Accordingly, the word 'their' modifies the words "Clubs," "Club(s)," and "Major League Baseball entity(ies)." Any other interpretation would render the phrase 'including in each case' mere surplusage, and it is a well established cannon of construction that a court should not construe a provision so as to render a word or phrase inoperative.  Moreover, it would be nonsensical to conclude that the word 'their' modifies only 'Major League Baseball entity(ies)' because the Major League Baseball entities do not employ players-only the Clubs do." (internal citation omitted)).

[3] Neither party suggests that the Twins are a "Major League Baseball entity," nor could they.  While the parts of the MLA in the record do not expressly define this term, the MLA uses it consistently but not exclusively to refer to the Office of the Commissioner.  It would be an odd contractual construction indeed that led us to define the Twins (including its players) as both a "Club" and a "Major League Baseball entity."  The only document in our record that contains an arbitration provision that applies between a Club and Costello is his Minor League Uniform Player Contract.  However, that contract does not define "Club" to include its employees, such as Dr. Olson.

6

of a Major League Baseball entity) on the other side.  Because Plaintiffs' claims do not fall within the scope of the arbitration provision relied upon by Dr. Olson, the trial court erred as a matter of law by granting Dr. Olson's motion to stay and compel arbitration.

In granting the motion to stay and compel arbitration, the trial court relied on *Wolf v. Rawlings Sporting Goods Co.*, 2010 WL 4456984 (S.D.N.Y. 2010), in which the U.S. District Court for the Southern District of New York applied the same arbitration provision.  However, that case is inapposite.  In *Wolf*, a player sued multiple Major League Baseball entities, including the Office of the Commissioner. *Id*. at *2.  Thus, *Wolf* concerned a dispute between a Club (as defined to include its players)[4] and Major League Baseball entities. *Id*.  The plaintiff's claims against the Major League Baseball entities in *Wolf* plainly fell within the scope of the arbitration provision.  Plaintiffs' claims in this case do not.

The *Wolf* court also held that certain co-defendants that were not signatories to the contract or expressly identified in the arbitration provision could nonetheless invoke the arbitration provision.[5] *Id*. at *3.  The plaintiff's claims against the non-signatories were intertwined with his claims against signatories to the arbitration provision that were plainly within the scope of the arbitration provision. *Id*.  The

---

[4] See footnote 2, *supra*.
[5] We express no view as to whether this holding in *Wolf* was correct.

7

plaintiff in fact alleged that the signatories and non-signatories were jointly and severally liable for the same alleged liability which, as to the signatories, was required to be adjudicated in arbitration. *Id.* Those facts do not exist here. Plaintiffs in this case do not assert some claims that are within the scope of the arbitration provision and some other claims that are not within the scope of the arbitration provision but that are nonetheless intertwined with the claims that are. Plaintiffs in this case only assert claims that are not within the scope of the arbitration provision.

## Conclusion

The trial court's order granting the motion to stay and compel arbitration is reversed and this case is remanded to the trial court for further proceedings consistent with this opinion. Because we hold that Plaintiffs' claims are not subject to arbitration, we need not decide whether Dr. Olson waived any right to arbitrate.

REVERSED and REMANDED.

TRAVER, C.J., and WOZNIAK, J., concur.

Raymond T. Elligett, Jr., and Shirley T. Faircloth, of Buell & Elligett, P.A., Tampa, and Gary D. Fox and Michael E. Levine, of Stewart Tilghman Fox Bianchi & Cain, P.A., Miami, for Appellants.

Jason M. Azzarone, Thomas Saieva, and Louis J. La Cava, of La Cava, Jacobson & Goodis, P.A., Tampa, for Appellee.

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED