DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ROBIN RESNICK,**
Appellant,

v.

**J. WEINSTEIN AND SONS, INC.,** a Florida corporation,
and **ABRAHAM RESNICK,** individually,
Appellees.

No. 4D14-3871

[April 29, 2015]

Appeal of a non-final order from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Dale Ross, Judge; L.T. Case No. 11-031543 CACE (08).

Franklin L. Zemel of Arnstein & Lehr LLP, Fort Lauderdale, for appellant.

G. Michael Keenan of G. Michael Keenan, P.A., West Palm Beach, Michael B. Smith, Natick, Massachusetts, and Donald N. David of Akerman LLP, New York, New York, for appellees.

GROSS, J.

This appeal pits son against father in a dispute over an order compelling arbitration and appointing the parties' accounting firm as arbitrator to decide a disagreement regarding contested loans. Based on the language of the parties' settlement agreement, we reverse the order and remand for the entry of an order consistent with the agreement, where an accounting firm first attempts to resolve the case and either party can request arbitration if there is no agreement over the accountants' resolution.

### *Factual Background*

This case arose from an ownership and management dispute between two affiliated companies involved in the textile business—Restex, Inc. and J. Weinstein & Sons, Inc. Prior to legal entanglement, appellant Robin Resnick was the sole shareholder of Restex, while his father—appellee

Abraham "Buddy" Resnick—held a 75% ownership interest in Weinstein. Both companies operated out of the same physical location and used the same employees, including the same accounting firm—Josephson Luxenberg Kance & Dolinger, PC.

On August 2, 2011, Restex brought suit against Weinstein and Buddy, asserting various claims related to their business dealings. Weinstein and Buddy responded with a lawsuit against Restex, Robin, and Michael Resnick. To resolve these disputes, the parties entered into a settlement agreement, wherein they agreed to dismiss both lawsuits and merge the two companies, with Buddy and Robin each owning 50% of the new company. Within this framework, the settlement agreement's section 8 sought to streamline resolution of pre-merger monetary disputes by submitting them to the parties' accounting firm:

> Prior Activities. Unless otherwise mutually agreed by ROBIN and BUDDY, all accountings, **personal loans**, tax returns, profits, and distributions in connection with the activities of RESTEX and/or WEINSTEIN conducted **prior to the effective date of the Merger** shall be **completed or determined by Josephson** . . . in accordance with generally accepted accounting principles, consistently applied, and past practices.

(Emphasis added). Following this determination, section 9 set forth the payoff parameters for pre-merger loans:

> Loans. Any amounts determined by [Josephson] to be due to ROBIN and/or BUDDY as the result of personal loans made by them to WEINSTEIN and/or RESTEX, for the periods prior to the Merger, shall be paid in equal monthly payments, at a minimum, to be concluded no later than December 31, 2013, unless otherwise mutually agreed upon by ROBIN and BUDDY.

Finally, section 22 of the settlement agreement contained an arbitration clause:

> Governing Law and Venue. This Agreement shall be construed in accordance with, and governed by, the laws of the State of Florida. **Any dispute, controversy, or claim arising out of or relating to this Agreement** or its breach, shall be subject to, interpreted by, enforceable under and governed by the laws of the State of Florida and **shall be resolved through binding arbitration in accordance with**

> **the applicable rules of the American Arbitration Association then in effect**.  The arbitration shall be conducted in Broward County, Florida by one (1) arbitrator to be mutually agreed upon by the parties.  If the parties cannot mutually agree upon the arbitrator, the American Arbitration Association shall appoint the arbitrator. . . .

(Emphasis added).

The joint ownership plan fell apart.  Robin filed suit in December, 2011, seeking judicial dissolution of the merged company.  Shortly thereafter, the trial court appointed a receiver to facilitate the company's liquidation.  The receivership remained in effect until May 2013, when the court entered an Omnibus Order Discharging Receiver and Providing Instructions Regarding the Conclusion of Receivership.  By that point, the entity's liquidated assets were being held in a trust account, pending resolution of the parties' disputes regarding their rightful distribution.

In August 2013, Robin filed an amended complaint against Buddy and the merged entity, asserting claims for collection of pre-merger loans distributable to Robin.  Specifically, the complaint's counts IV, V, and VIII asserted the following:

- In Count IV, Robin alleged he is owed $250,000 plus interest for a 2007 loan he made to Restex.  Acknowledging that, pursuant to the settlement agreement, loans were to be determined by Josephson, Robin asserted Josephson had "properly determined that the said debt of Restex to Robin in the amount of $250,000 should be transferred to the books and records of . . . the surviving entity."

- In Count V, Robin alleged he is owed $831,722.49 for a loan he made to Restex prior to the merger.

- In Count VIII, Robin alleged he, his wife, and children are owed $116,148.34 as shareholders of Restex for pre-merger profits allocated but not actually distributed.

Since the claims pertained to pre-merger loans, Buddy moved to compel arbitration on counts IV, V, and VIII pursuant to the settlement agreement's section 8.  The functional purpose of the motion was to secure a "determination by Josephson."

At the hearing on the motion, Robin countered that matters of arbitration should be governed by the settlement agreement's section 22.

Pursuant to section 22, Robin argued the entire dispute must be submitted to arbitration, where the arbitrator must be agreed upon by the parties or appointed by the American Arbitration Association.

The trial court rejected Robin's interpretation and entered an order compelling arbitration and stating that "the Josephson firm shall arbitrate."

### *Discussion*

"[B]ecause arbitration provisions are contractual in nature, construction of such provisions and the contracts in which they appear remains a matter of contract interpretation." *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999); *see also Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 69 (2010) ("[A]rbitration is a matter of contract."). "Arbitrability of a dispute turns on the parties' intent; no party must submit a dispute to arbitration it did not intend and agree to arbitrate." *Maguire v. King*, 917 So. 2d 263, 266 (Fla. 5th DCA 2005) (citation omitted). Therefore, the intent of the parties, "as manifested in the plain language of the arbitration provision and contract itself," controls. *Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013). Generally, the interpretation of a contract "'which gives a reasonable meaning to all provisions of a contract is preferred to one which leaves a part useless or inexplicable.'" *PNC Bank, N.A. v. Progressive Emp'r Servs. II*, 55 So. 3d 655, 658 (Fla. 4th DCA 2011) (quoting *Premier Ins. Co. v. Adams*, 632 So. 2d 1054, 1057 (Fla. 5th DCA 1994)).

Our reading of the settlement agreement is that the parties established a two-step process for resolving disputes. First, section 8 submits the dispute to the accounting firm, which is to apply "generally accepted accounting principles, consistently applied, and past practices" as the key parameters for evaluating claims. Nothing in section 8 indicates that the accountants' resolution is final or binding on the parties.

The second step of the agreement comes into play if a party disagrees with the accounting firm's application of accounting principles or past practices in reaching a decision. Section 22 provides that "[a]ny dispute, controversy, or claims arising out of or relating to th[e] Agreement or its breach . . . shall be resolved through binding arbitration." A dispute over the accounting firm's resolution under section 8 falls within the scope of the arbitration agreement.

The trial court's order submitted the case to the accounting firm for a binding decision as an arbitrator. This was contrary to the settlement agreement. We reverse and remand to the circuit court for the entry of an order (1) submitting the case to the accounting firm pursuant to section 8

and (2) ordering arbitration pursuant to section 22 in the event that either party disputes the resolution reached by the accountants.

WARNER and FORST, JJ., concur.

*       *       *

***Not final until disposition of timely filed motion for rehearing.***