# Third District Court of Appeal

## State of Florida

Opinion filed September 29, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D20-1154 and 3D20-1197
Lower Tribunal Nos. 20-2464, 20-2466

_____

**BREA 3-2 LLC, etc., et al.,**
Appellants,

vs.

**Hagshama Florida 8 Sarasota, LLC, etc., et al.,**
Appellees.

Appeals from the Circuit Court for Miami-Dade County, Beatrice Butchko, Judge.

Anthony & Partners, LLC, and John A. Anthony and Andrew J. Ghekas (Tampa), for appellants.

Levine Kellogg Lehman Schneider + Grossman LLP, and Stuart I. Grossman and Matthew J. McGuane; D'Agostino, Levine, Landesman, Lederman, Rivera & Sampson, LLP, and Bruce H. Lederman (New York, NY), for appellees.

Before EMAS, LINDSEY and BOKOR, JJ.

EMAS, J.

## I.    INTRODUCTION

In these consolidated appeals, plaintiffs below, BREA 3-2 LLC, Michael Bednarski, and Peggy Tseung (BREA), appeal two final orders compelling arbitration and dismissing—without prejudice—their lawsuits against Hagshama Florida 8 Sarasota, LLC and Hagshama Florida 10 Orlando, LLC (Hagshama), defendants below.  Although BREA raises a number of issues on appeal, we address primarily: (1) whether the trial court erred in finding that the underlying arbitration clause is a "broad" provision under the case law; and (2) whether the trial court erred in determining that the decision in Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445-46 (2006) required the parties to arbitrate the dispute.  We hold that the trial court erred in both rulings, and reverse the orders compelling arbitration and dismissing the action.

We hold that the arbitration clause, by which the parties agreed to arbitrate any dispute "under the Agreement," constitutes a narrow arbitration provision, and that the claims alleged in the complaint below (usury and related claims premised on an allegedly usurious loan) do not have the requisite "direct relationship" to the underlying agreement such that the parties agreed to arbitrate this dispute.

2

In reversing on this basis, we agree with the strict holding of our sister court in Party Yards, Inc. v. Templeton, 751 So. 2d 121 (Fla. 5th DCA 2000). In Party Yards, the Fifth District, construing a contract with a similarly narrow arbitration provision (providing that "any controversy arising under this Agreement shall be submitted to arbitration"), held that "the arbitration provision of the contract is not broad enough to encompass a usury violation" and that the statutory usury claim did not "arise under" the agreement but instead arose under Florida statutory law. Id. at 123.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

In 2015, BREA was formed to serve as general partner in certain real estate development projects. BREA developed business plans to acquire and develop two vacant pieces of land—one in Sarasota and one in Orlando. In 2016, to finance the development projects, BREA entered into two separate Agreements with Hagshama—one Agreement for each project. Relevant to our purposes, each of the Agreements contained the identical arbitration provision:

> ***Any dispute under this Agreement*** or any Exhibit attached hereto ***shall be submitted to arbitration*** under the American Arbitration Association (the "AAA") in New York City, New York .
> . . .

(Emphasis added).

3

Attached to each Agreement was a Guaranty. Although individual appellants Michael Bednarski and Peggy Tseung (in their personal capacities) are not signatories to the Agreements, they are each (in their personal capacities) signatories to the Guaranty which are paginated as part of each Agreement. Also, each document references the other, i.e., the Guaranty confirms that the signatories "accept and agree to be bound" by the Agreement as if they were "a direct party to the Agreement," and the Agreement requires appellants to personally guarantee (via the Guaranty) BREA's "undertakings and obligations" under the Agreement.[1]

When neither Project was completed prior to the maturity date in the Agreement, Hagshama sent notices of default and demand letters asserting that BREA breached or failed to meet the obligations under the Agreements.

---

[1] One of the arguments raised on appeal is that the trial court erred in enforcing the arbitration provision in the Agreement against appellants where they are not signatories to the Agreements. This argument misses the mark because, as detailed above, the Guaranty (to which appellants were signatories) expressly incorporated the terms of the Agreement. See Massa v. Michael Ridard Hosp. LLC, 306 So. 3d 1106, 1109 (Fla. 3d DCA 2020) (observing: "Nonsignatories have been held to be bound to arbitration agreements under the theories of (1) incorporation by reference; (2) assumption; (3) agency; (4) veil piercing/alter ego; and (5) estoppel.") (quoting Liberty Comms., Inc. v. MCI Telecomms. Corp., 733 So. 2d 571, 574 (Fla. 5th DCA 1999)). See also Perdido Key Island Resort Dev., L.L.P. v. Regions Bank, 102 So. 3d 1, 3 (Fla. 1st DCA 2012) (finding that the claim for foreclosure of the mortgage was arbitrable where, under the plain language of the contract, the mortgage explicitly incorporated the terms of the note).

In response, BREA filed the underlying state court actions against Hagshama—one as to the Sarasota Agreement and the other as to the Orlando Agreement—alleging, inter alia, that appellees were attempting to collect on two "criminally usurious debts" in violation of section 687.071, Florida Statutes (2016). The complaints sought: damages for usury under section 687.071 (Count I); declaratory relief, i.e., a declaration that the Agreements are illegal and unenforceable against appellants (Count II); and injunctive relief, i.e., enjoining appellees from enforcing the Agreements (Count III).

Hagshama moved to stay the action and compel arbitration and, in the alternative, to dismiss the action for improper venue. Hagshama maintained that the arbitration provision is broad, and relied on Buckeye, 546 U.S. at 444-46, for the proposition that, because appellants' usury claims challenged the "contract as a whole" as "void for illegality," the claims must be "considered by an arbitrator, not a court." BREA countered that Buckeye is distinguishable because the instant arbitration provision is "narrow," as contrasted with the concededly broad arbitration provision in Buckeye.

The trial court concluded that the arbitration clause "of the subject Agreement is broad, valid and enforceable;" ordered BREA to refile their claims in an arbitration proceeding before the AAA in New York, and

pursuant to New York substantive law; and dismissed the cases without prejudice to any New York court proceedings "to enforce or reject any determination in arbitration." This appeal followed.

## III. DISCUSSION AND ANALYSIS[2]

In adopting section two of the Federal Arbitration Act,[3] "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." Southland Corp. v. Keating, 465 U.S. 1, 10 (1984).

Accordingly, "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute."

---

[2] An order granting a motion to compel arbitration is reviewed de novo. Yam Exp. & Imp. LLC, v. Nicaragua Tobacco Imps., Inc., 298 So. 3d 1173, 1175 (Fla. 3d DCA 2020). The interpretation of a contractual forum selection clause is also a question of law, which we review de novo. Am. Safety Cas. Ins. Co. v. Mijares Holding Co. LLC, 76 So.3d 1089 (Fla. 3d DCA 2011).

[3] 9 U.S.C. § 2 (entitled "Validity, irrevocability, and enforcement of agreements to arbitrate") provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

6

All S. Subcontractors, Inc. v. Amerigas Propane, Inc., 206 So. 3d 77, 80-81 (Fla. 1st DCA 2016) (quotation omitted). See also Seifert v. U.S. Home Corp., 750 So. 2d 633, 636 (Fla. 1999) (holding: "[N]o party may be forced to submit a dispute to arbitration that the party did not intend and agree to arbitrate.") Arbitration provisions are "contractual in nature," and, therefore, "[t]he intent of the parties to a contract, as manifested in the plain language of the arbitration provision and contract itself, determines whether a dispute is subject to arbitration." Jackson v. Shakespeare Found., Inc., 108 So. 3d 587, 593 (Fla. 2013).

Appellants contend that the trial court in the instant case overlooked this "first task" and, instead, relied exclusively on what it perceived to be the holding in Buckeye to grant the motion to compel arbitration of these usury claims. We agree.

### A. *Buckeye*

In Buckeye, 546 U.S. at 444, the plaintiffs alleged that "various deferred-payment transaction[]" agreements entered into with the defendant were "rendered invalid by the usurious finance charge." The trial court denied defendant's motion to compel arbitration of the claim. On appeal from the order denying the motion to compel arbitration, the Fourth District Court of Appeal reversed the trial court's order, holding that the challenge to the

7

underlying contract's validity must be resolved by an arbitrator, not a trial court.  Buckeye Check Cashing, Inc. v. Cardegna, 824 So. 2d 228 (Fla. 4th DCA 2002).  The Florida Supreme Court quashed the Fourth District's decision, holding that a challenge to the entire contract as void (usurious) was a question for the trial court, not an arbitrator.  Cardegna v. Buckeye Check Cashing, Inc., 894 So. 2d 860 (Fla. 2005).  The Florida Supreme Court reasoned that to enforce an agreement in a contract challenged as unlawful "could breathe life into a contract that not only violates state law, but also is criminal in nature, by use of an arbitration provision."  Id. at 862 (quotation omitted).

The United States Supreme Court disagreed, reversing the decision of the Florida Supreme Court.  In doing so, the Court interpreted section 2 of the Federal Arbitration Act (FAA), holding that the arbitration provision in a potentially void contract is severable from the remainder of the contract.  It further rejected the notion that state law controlled on the issue of severability, holding: "[W]e cannot accept the Florida Supreme Court's conclusion that enforceability of the arbitration agreement should turn on Florida public policy and contract law."  Buckeye, 546 U.S. at 446 (quotation omitted).

8

Having determined that federal law, not state law, controlled the question of severability and that, under federal law, the arbitration clause was severable from the remainder of the contract, the Court concluded that plaintiff's claims—alleging the contract was usurious and therefore invalid—must be resolved by the arbitrator:

> We reaffirm today that, regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator.

Id. at 449. The Court reasoned that a contrary holding "permits a court to deny effect to an arbitration provision in a contract that the court later finds to be perfectly enforceable." Id. at 448-49.

### B. *Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287 (2010)*

An isolated reading of Buckeye's conclusion—that "a challenge to the validity of the contract as a whole. . . must go to the arbitrator"—might reasonably lead one to conclude that all such challenges must, as a matter of law, be resolved in arbitration. However, such a conclusion is belied by subsequent Court decisions explaining that the issue in Buckeye was severability of the arbitration provision from the remainder of the contract. The Court did not specifically address whether the usury claim was subject to arbitration under the contract because, given the obviously broad scope

9

of the contract's arbitration provision, no discussion of that issue was necessary.

The Court made this point most plainly four years later, in <u>Granite Rock v. Int'l Bhd. Of Teamsters</u>, 561 U.S. 287 (2010), clarifying its holding in <u>Buckeye</u>, and reaffirming a trial court's threshold obligation: when considering whether to compel parties to arbitrate a dispute, a trial court is required to first determine whether "the parties' arbitration agreement was validly formed and that it covered the dispute in question and was legally enforceable." <u>Id.</u> at 300. The Court further explained:

> That <u>Buckeye</u> and some of our cases applying a presumption of arbitrability to certain disputes do not discuss each of these requirements merely reflects the fact that *in those cases some of the requirements were so obviously satisfied that no discussion was needed.*
>
> In <u>Buckeye</u>, . . . [t]he arbitration clause's scope was [] not at issue, because the provision expressly applied to " '[a]ny claim, dispute, or controversy . . . arising from or relating to . . . the validity, enforceability, or scope of this Arbitration Provision or the entire Agreement.' "

<u>Id.</u> at 302-03.

The party opposing arbitration in <u>Buckeye</u> was not contesting whether the scope of the arbitration agreement was broad enough to encompass a usury claim. Instead, the party opposing arbitration was contending that the usurious nature of the contract rendered the entire contract invalid, including

10

the arbitration clause. Thus, the argument went, the Court could not apply the arbitration provision or "rely upon it as evidence of the parties' consent to arbitrate matters within its scope." Id. at 303.

The Buckeye Court rejected this argument, and "simply applied the requirement in § 2 of the FAA that courts treat an arbitration clause as severable from the contract in which it appears and enforce it according to its terms unless the party resisting arbitration specifically challenges the enforceability of the arbitration clause itself, or claims that the agreement to arbitrate was [n]ever concluded." Id. at 301 (citations and quotations omitted).

Read in proper context—and with the clarity provided in Granite—Buckeye stands for the proposition that 1) pursuant to federal law, an arbitration provision is severable from the rest of the contract; 2) a challenge to the validity or enforceability of the contract as a whole (e.g., a usury claim) does not preclude arbitration of a dispute or claim which is otherwise within the scope of the arbitration provision agreed to by the parties; and 3) an exception exists where the party opposing arbitration "specifically challenges the enforceability of the arbitration clause itself, or claims that the agreement to arbitrate was never concluded." Id.

### C. *What did the parties agree to arbitrate?*

Granite Rock and its clarification of Buckeye's holding require that we "treat an arbitration clause as severable from the contract in which it appears *and enforce it according to its terms*." Id. (emphasis added). This brings us back to the principal consideration in the instant case—what did the parties agree to arbitrate? Because the parties in the instant case disagree on the scope of the arbitration clause ("broad" v. "narrow"), we must next consider the scope of the instant arbitration clause, and whether the language requires arbitration of BREA's claim that the Agreements were illegal and unenforceable under Florida's usury law.

### 1. *The arbitration clause in the instant case is narrow, not broad.*

"A trial court's role in determining arbitrability under the Revised Florida Arbitration Code is limited to the following inquiries: (1) whether a valid written agreement to arbitrate exists; (2) *whether an arbitrable issue exists*; and (3) whether the right to arbitration was waived." City of Miami v. Fraternal Order of Police Lodge #20, 248 So. 3d 273, 275 (Fla. 3d DCA 2018) (quotation omitted) (emphasis added). The question presented here is whether the usury claim, and the related claims for injunctive and declaratory relief, are arbitrable under the Agreement.

In making this determination, we first consider whether the arbitration provision at hand is broad or narrow in scope. The Florida Supreme Court

12

in <u>Jackson</u>, 108 So. 3d at 593, provided examples to distinguish between "broad" and "narrow" arbitration provisions:

> An arbitration provision that is considered to be narrow in scope typically requires arbitration for claims or controversies <u>"arising out of"</u> the subject contract. This type of provision limits arbitration to those claims that have a direct relationship to a contract's terms and provisions. In contrast, an arbitration provision that is considered to be broad in scope typically requires arbitration for claims or controversies <u>"arising out of or relating to"</u> the subject contract. The addition of the words "relating to" broadens the scope of an arbitration provision to include those claims that are described as having a "significant relationship" to the contract—regardless of whether the claim is founded in tort or contract law.

(Emphasis added) (citations omitted). <u>See also</u> <u>Seifert</u>, 750 So. 2d at 636-7 (observing that clauses covering all claims or controversies "arising out of" or "under" the subject contract have been considered by some courts to be narrow in scope and arbitration under such provisions is limited to those claims having some direct relation to the terms and provisions of the contract); <u>Hedden v. Z Oldco, LLC</u>, 301 So. 3d 1034, 1039 (Fla. 2d DCA 2019) (finding that arbitration clause was broad where clause required arbitration of "'[a]ny dispute, controversy or claim arising out of <u>or relating to'</u> the Compensation Agreement") (citing <u>O'Keefe Architects, Inc. v. CED Const. Partners, Ltd.</u>, 944 So. 2d 181, 188 (Fla. 2006) (noting: "In this case, the parties agreed to a broad provision that requires arbitration of '[c]laims, disputes, and other matters . . . ***arising out of or relating to'*** the contract."))

13

(emphasis added); <u>Heller v. Blue Aerospace, LLC</u>, 112 So. 3d 635, 636 (Fla. 4th DCA 2013) (finding that the contract contained a narrow arbitration provision where the parties agreed to "submit all disputes, controversies and claims ***arising under this Agreement*** to binding arbitration") (emphasis added).

Applying the well-established case law to the arbitration clause in the Agreements, we conclude that the language used is undoubtedly narrow:

> ***Any dispute under this Agreement*** or any Exhibit attached hereto ***shall be submitted to arbitration*** under the American Arbitration Association (the "AAA") in New York City, New York .
> . . .

(Emphasis added.)

Of note, the arbitration language here is significantly narrower than that in <u>Buckeye</u>, which required arbitration of "[a]ny claim, dispute, or controversy . . . *arising from* **_or relating to_** *this Agreement* . . . **_or the validity,_** **_enforceability, or scope_** *of this Arbitration Provision or the entire* **_Agreement_** . . .." <u>Buckeye</u>, 546 U.S at 442 (emphasis added).[4]

---

[4] Again, the broad language of the <u>Buckeye</u> arbitration provision illustrates the focus of the parties' disagreement in <u>Buckeye</u> was not on whether an arbitrable issue existed. Instead, the question was whether the rule of severability of an arbitration provision was limited in application to federal courts or applied equally to state courts. Indeed, given the sweeping language of <u>Buckeye</u>'s arbitration provision, it is understandable the Court saw no need to address whether a claim challenging the entire agreement (as usurious) was arbitrable.

In addition, while the language used in an agreement's forum selection provision is generally irrelevant to determining whether the language of an agreement requires arbitration of a particular claim or dispute, it is worth noting that the forum selection provision in the instant Agreements demonstrates the parties were fully capable of crafting a broad arbitration provision given the language they used in the immediately preceding paragraph of the Agreement:

> This Agreement shall be governed by and construed in accordance with the laws of the State of New York, United States of America. The Parties <u>agree to submit themselves to the jurisdiction of the courts situated within the State of New York with regard to any controversy ***arising out of or relating to*** this Agreement.</u>
>
> ***Any dispute under this Agreement*** or any Exhibit attached hereto ***shall be submitted to arbitration*** under the American Arbitration Association (the "AAA") in New York City, New York .
> . . .

(Emphasis added). The use of this language and juxtaposition of these two paragraphs suggests the parties intended to create an arbitration provision that was narrow in scope.

Concluding that the arbitration clause is narrow, we must next determine whether the usury claim arises "under the Agreement" and has a "direct relationship" to the narrow arbitration provision.

### a. *The usury claim in this case does not arise "under the Agreement" and does not have a "direct relationship" to the Agreement.*

Appellants contend that the usury claim (and the related declaratory and injunctive claims premised on usury) are not arbitrable because the claim "arises under" Florida's usury statute rather than under the Agreement itself. That is, the duty and obligation not to commit usury, and the resulting illegality of the Agreement, arise under state statutory law. It follows, appellants urge, that this narrow arbitration provision, by which the parties agreed to arbitrate "any dispute under the Agreement" does not include a claim that the Agreement is illegal or unenforceable under Florida's usury law. We agree.

As the Florida Supreme Court has explained, such a narrow arbitration provision "limits arbitration to those claims that have a *direct relationship* to a contract's terms and provisions." Jackson, 108 So. 3d at 593 (emphasis added). "In contrast, when a contract contains a broad arbitration provision, the court will compel arbitration when the party's claims have a 'significant relationship' to the contract." Vanacore Constr., Inc. v. Osborn, 260 So. 3d 527, 530 (Fla. 5th DCA 2018) (citing Jackson,108 So. 3d at 593).

Because these two tests—the "direct relationship" test for narrow arbitration provisions and the "significant relationship" test for broad

16

arbitration provisions—are not particularly intuitive, it is helpful to consider the case law further defining these tests. We note that there is relatively little case law in Florida expounding on the more rigorous "direct relationship" test for narrow arbitration provisions as compared to the abundance of case law on the more arbitration-friendly and more easily satisfied "significant relationship" test applied to broad arbitration provisions. And because the significant relationship test is easier to satisfy, we recognize that if the narrow arbitration provision at issue cannot meet that less-rigorous test for arbitrability of broad provisions, it necessarily cannot meet the more-rigorous "direct relationship" test for arbitrability of narrow provisions.

In Seifert, 750 So. 2d at 638-39, the Florida Supreme Court explained that, to submit a claim to arbitration, the "significant relationship" test requires "some nexus between the dispute and the contract containing the arbitration clause." The Court further explained:

> [T]he mere fact that the dispute would not have arisen but for the existence of the contract and consequent relationship between the parties is insufficient by itself to transform a dispute into one "arising out of or relating to" the agreement.
>
> ***
>
> [F]or a tort claim to be considered "arising out of or relating to" an agreement, it must, at a minimum, raise some issue the resolution of which requires reference to or construction of some portion of the contract itself.
>
> ***
>
> If the contract places the parties in a unique relationship that creates new duties not otherwise imposed by law, then a dispute

17

regarding a breach of a contractually-imposed duty is one that arises from the contract. Analogously, such a claim would be one arising from the contract terms and therefore subject to arbitration where the contract required it. **If, on the other hand, the duty alleged to be breached is one imposed by law in recognition of public policy and is generally owed to others besides the contracting parties, then a dispute regarding such a breach is not one arising from the contract, but sounds in tort**. Therefore, a contractually-imposed arbitration requirement . . . would not apply to such a claim.

Seifert, 750 So. 2d at 638-39 (emphasis added) (citations and quotations omitted). This "contractual nexus" component of the significant relationship test was reaffirmed by the Florida Supreme Court in Jackson:

[A] claim has a nexus to a contract and arises from the terms of the contract if it emanates from an inimitable duty created by the parties' unique contractual relationship. In contrast, **a claim does not have a nexus to a contract if it pertains to the breach of a duty otherwise imposed by law or in recognition of public policy, such as a duty under the general common law owed not only to the contracting parties but also to third parties and the public.**

Jackson, 108 So. 3d at 593 (emphasis added).

In the instant case, we have a narrow arbitration provision (requiring the parties to arbitrate "[a]ny dispute under this Agreement") and a usury claim premised upon a duty imposed by Florida statute. Even applying the less-rigorous "significant relationship/contractual nexus" test typically reserved for broad arbitration provisions, it is clear this usury claim is not arbitrable: it cannot be said that the usury claim arises "under the

18

Agreement" because "the duty alleged to be breached is one imposed by law in recognition of public policy and is generally owed to others besides the contracting parties."[5]  It simply cannot satisfy Seifert and Jackson's requirement that the claim "emanate[] from an inimitable duty created by the parties' unique contractual relationship;" instead, the instant claim is one that "pertains to the breach of a duty otherwise imposed by law or in recognition of public policy, such as a duty under the general common law owed not only to the contracting parties but also to third parties and the public."  Jackson, 108 So. 3d at 593.[6]  As a result, if this claim cannot be said to have a

---

[5] As observed in Dunn v. Global Trust Management, 506 F. Supp. 3d 1214, 1222 (M.D. Fla. 2020):

> Usury has been forbidden for millennia by civilized society. The strong victimize the weak. It makes the rich richer and the poor poorer. The Code of Hammurabi (circa 1750 B.C.) barred usury. Both Plato and Aristotle noted it is immoral and unjust. The Roman Code of Justinian barred usury, as did the Abrahamic religions. The prophet Ezekiel listed usury among abominations like violence and rape. See Ezekiel 18:8-21. In The Inferno, Dante placed usurers in the seventh circle of hell—below murderers. Shakespeare of course illustrated its corrosive traits in the notorious The Merchant of Venice. Usury and loansharking were outlawed in all the American colonies, following English common law practice. And usury is a crime in Florida, see Fla. Stat. § 687.071. . . .

(Footnotes omitted.)

[6] We recognize that this usury claim satisfies one portion of the significant relationship/contractual nexus test, which requires that "for a tort claim to be

19

"significant relationship" to the Agreement, it self-evidently cannot satisfy the more rigorous requirement that it bear a "direct relationship" to the Agreement.

This is not to say that a usury claim, as a matter of law, can <u>never</u> be subject to arbitration.[7]  It simply means that a claim such as this will generally

considered 'arising out of or relating to' an agreement, it must, at a minimum, raise some issue the resolution of which requires reference to or construction of some portion of the contract itself."  <u>Seifert</u>, 750 So. 2d at 638.  <u>See also</u> <u>Jackson</u>, 108 So. 3d at 593 ("A contractual nexus exists between a claim and a contract if the claim presents circumstances in which the resolution of the disputed issue requires either reference to, or construction of, a portion of the contract.")  Nevertheless, this is only one aspect of what <u>Seifert</u> and <u>Jackson</u> require, even when analyzing the scope of a broad arbitration provision.  The narrow arbitration provision agreed to by the parties in the instant case cannot satisfy the remaining aspects of the contractual nexus test because the usury claim does not "emanate[] from an inimitable duty created by the parties' unique contractual relationship," but instead is a claim that "pertains to the breach of a duty otherwise imposed by law or in recognition of public policy, such as a duty under the general common law owed not only to the contracting parties but also to third parties and the public."  <u>Jackson</u>, 108 So. 3d at 593.

[7] To the extent that <u>Party Yards</u> (and its progeny, <u>FastFunding The Company, Inc. v. Betts</u>, 758 So. 2d 1143 (Fla. 5th DCA 2000)) held in absolute terms that <u>any</u> usury claim, <u>as a matter of law</u>, cannot be arbitrated regardless of the narrow or broad scope of the parties' agreement to arbitrate, such a holding was disapproved by the United States Supreme Court's decision in <u>Buckeye</u>, 546 U.S. at 445-46, as reflected in the Florida Supreme Court's decision on remand, <u>see</u> <u>Buckeye</u>, 930 So. 2d at 611:

> In the Fourth District's decision in <u>Cardegna</u>, the court held that a borrower's claim that a contract was void ab initio under Florida law and public policy must be resolved by arbitration where there was no separate claim that the arbitration provision in the

20

not be subject to arbitration under a narrow arbitration provision such as the one agreed to by the parties in the instant case. But a usury claim <u>can be</u> subject to arbitration if the language of the arbitration provision is broad enough to express the parties' intent that such a claim or dispute will be subject to arbitration, which is precisely what the Court held in <u>Buckeye</u>, given the broad language contained in the arbitration agreement in that case.[8]

---

contract itself was unenforceable. This Court quashed and held that the dispute as to the validity of the contract must first be resolved in court before the arbitration provision could be enforced. In turn, the United States Supreme Court has reversed this Court's decision, and, in effect approved the holding of the Fourth District.

Accordingly, consistent with and pursuant to the United States Supreme Court's decision, we withdraw our previous opinion and now approve the decision of the Fourth District and disapprove of the conflicting opinion of the Fifth District in <u>Fastfunding the Company, Inc. v. Betts</u>, 758 So.2d 1143 (Fla. 5th DCA 2000).

What remains of <u>Party Yards</u> is its strict holding, based upon the narrow arbitration provision (providing that "any controversy arising under this Agreement shall be submitted to arbitration"), that "the arbitration provision of the contract is not broad enough to encompass a usury violation" and thus the statutory usury claim did not "arise under" the agreement but arose only under Florida statutory law. <u>Id.</u> at 123. We agree with this holding and find it fully applicable here.

[8] "Any claim, dispute, or controversy. . . arising from or relating to this Agreement. . . or the validity, enforceability, or scope of this Arbitration Provision or the entire Agreement. . . shall be resolved. . . by binding arbitration. . . . ." <u>Buckeye</u>, 546 U.S. at 442 (emphasis added).

## IV. CONCLUSION

Given the narrow language contained in the arbitration provision of the parties' underlying agreement, we conclude that the usury and usury-related claims do not "arise under the Agreement," do not satisfy the "direct relationship" test of <u>Seifert</u> and <u>Jackson</u>, and are not subject to arbitration. We reverse the trial court's order dismissing the action without prejudice and compelling arbitration in New York and remand for further proceedings consistent with this opinion.[9]

---

[9] Appellants also challenge the trial court's order dismissing based on improper venue (forum selection) and its order determining that New York substantive law applies. We reverse the order on these two issues as well.

 With regard to these issues, the Agreement provides in pertinent part:

> This Agreement **shall be governed by and construed in accordance with the laws of the State of New York**, United States of America. **The Parties agree to submit themselves to the jurisdiction of the courts situated within the State of New York with regard to any controversy arising out of or relating to this Agreement**.

(Emphasis added). Because this is a permissive forum selection clause, the trial court erred in requiring that "any judicial proceedings [] be brought in a court of competent jurisdiction in the State of New York." <u>Rudman v. Numismatic Guar. Corp. of Am.</u>, 298 So. 3d 1212, 1214 (Fla. 3d DCA 2020) (holding: "Mandatory forum selection clauses require or unequivocally specify . . . that a particular forum be the exclusive jurisdiction for litigation concerning the contract. Whereas, permissive forum selection clauses constitute nothing more than a consent to jurisdiction and venue in the named forum and do not exclude jurisdiction or venue in any other forum.

Hence, forum selection clauses that lack mandatory or exclusive language are generally found to be permissive") (citations and quotations omitted). Compare with Michaluk v. Credorax (USA), Inc., 164 So. 3d 719, 725 (Fla. 3d DCA 2015) (finding the following forum selection clause to be permissive: "This Agreement shall be governed by and construed in accordance with the Laws of Malta and each party hereby submits to the jurisdiction of the Courts of Malta as regards any claim, dispute or matter arising out of or in connection with this Agreement, its implementation and effect.")

As to the trial court's determination that New York substantive law would apply, we note the trial court need not have reached this issue once it determined the claims were to be arbitrated and that further proceedings were to take place in a New York forum. Further, while the forum selection and arbitration issues presented questions of law, the choice-of-law issue presented not only a question of law, but questions of fact as well, see, e.g., § 671.105(1), Fla. Stat. (2020) (providing: "Except as provided in this section, when a transaction bears a reasonable relation to this state and also to another state or nation, the parties may agree that the law either of this state or of such other state or nation will govern their rights and duties"), which were not fully developed or analyzed on the record before us. We do not reach the merits of the choice-of-law issue, but reverse this remaining portion of the orders on appeal and remand for further proceedings as may be appropriate.