# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

————————————————

Case No. 5D23-1784
LT Case No. 2022-CA-006818

————————————————

THE WALSH GROUP d/b/a Archer
Western Contractors, LLC,

    Appellant,

    v.

ZION JACKSONVILLE, LLC,
FLORIDA ROADS TRUCKING, LLC,
GEC TRUCKING AND
CONSTRUCTION, INC., f/k/a GEC
Trucking, Inc., CAPPS LAND
MANAGEMENT AND TRUCKING
INC., et al.,

    Appellees.

————————————————

On appeal from the Circuit Court for Duval County.
Bruce R. Anderson, Jr., Judge.

Timothy D. Woodward and Alyssa Cory, of Shutts & Bowen LLP,
Tampa, for Appellant.

Niels P. Murphy and Davis D. Balz, of Murphy & Anderson, P.A.,
and Andrew P. Brigham and Trevor S. Hutson, of Brigham
Property Rights Law Firm, PLLC, St. Augustine, for Appellee,
Zion Jacksonville, LLC.

No Appearance for Remaining Appellees.

JAY, J.

Appellee ("Zion") sued Appellant ("Archer"). Archer moved to compel the arbitration of Zion's claims. The trial court only partially granted Archer's motion, ruling that just two of Zion's claims are subject to arbitration. We agree with Archer that the trial court should have granted the motion in full.

I.

The Florida Department of Transportation hired Archer to make road improvements in Jacksonville. Zion owns land in the vicinity of the project. Archer and Zion formed a contract under which Archer would pay Zion to enter Zion's property to export certain sand that is useful for road construction. The contract included an arbitration clause. In relevant part, the clause provided that "[a]ny controversy or claim" by Archer against Zion or Zion against Archer "shall, at the option of [Archer] or [Archer's] surety and at any time, be resolved by arbitration pursuant to rules determined by [Archer]."

Zion later sued Archer for littering, trespass, organized fraud, gross negligence, breach of contract, and unjust enrichment. Zion attached the Archer contract to its complaint and incorporated the contract into its allegations. Zion's reliance on the contract is evident throughout the complaint. Indeed, one particularly representative section reads:

> 127. Archer Western and employees, representatives, and/or agents of Archer Western, including the Trucking Companies, were not authorized to enter to Zion Property for any purpose **other than what was explicitly spelled out in the Purchase Order Contract**. *See* **Exhibit B**.
>
> 128. Archer Western and employees, representatives, and/or agents of Archer Western, including the Trucking Companies, **were never authorized, by contract** or

otherwise, to dump imported, unsuitable, non-native fill material, or debris of any kind (collectively, "Material"), on the Zion Property.

129. **The Purchase Order Contract was for** the *export* of A-3, Select Fill from the Zion Property and <u>not</u> for the *import* of any type of materials whatsoever to the Zion Property.

130. Archer Western's or its respective Trucking Companies' intentional deceptive dumping and concealment practices and other tortious conduct, **were entirely outside of the consideration, contemplation, or expectation of the parties to the Purchase Order Contract**.

131. Archer Western and employees, representatives, and/or agents of Archer Western, including the Trucking Companies, acted, collectively, ***ultra vires*** to violate Zion's private property rights.

132. Yet, it was **the Purchase Order Contract**, **and the authorization to be present** upon and use the Zion Property in order to remove and export A-3, Select Fill material from the Zion Property, that provided a "front" or "cover" for Archer Western and its respective Trucking Companies to use the Zion Property as a hidden dump site.

133. Zion, as the owner of private property, never gave its *consent* to Archer Western and employees, representatives, and/or agents of Archer Western, including the Trucking Companies, to dump the imported, unsuitable, non-native fill material or debris.

134. Archer Western and employees, representatives, and/or agents of Archer Western, including the Trucking Companies, **exceeded the authorization granted in the Purchase Order Contract** to use the Zion Property in a completely different manner and for a completely

different purpose **than what was explicitly spelled out in the Purchase Order Contract**.

135. Archer Western and employees, representatives, and/or agents of Archer Western, including the Trucking Companies, violated Zion's *property rights* by trespassing on the Zion Property, **exceeding the authorization granted to use the property pursuant to the Purchase Order Contract**, and dumping imported, unsuitable, non-native fill material and debris from the North I Project.

(Bolding of "Exhibit B" in original, all other bold font added).

Zion expressly reasserted, realleged, and incorporated these paragraphs into each of its claims against Archer. Zion did the same as to its allegation that "[a]ll conditions precedent to the bringing of this action, both legal and **contractual**, have been performed, excused, or waived." (Emphasis added).

Based on these allegations and the arbitration clause in the parties' contract, Archer moved to compel arbitration. Zion conceded that arbitration was appropriate for the breach of contract and unjust enrichment claims, but it opposed arbitration of the remaining claims.

The trial court agreed with Zion. The court observed that while the arbitration clause was "broad," arbitration of a given claim still required the claim to have a nexus with Archer and Zion's agreement. While the court found a nexus as to the claims for breach of contract and unjust enrichment, it determined that Zion's claims for littering, trespass, organized fraud, and gross negligence "could have arisen without the existence of a contract and stem from the alleged violation of duties that are imposed **wholly independent** of the Contract." (Emphasis added). As such, the court determined that these claims were not subject to the contract's broad arbitration clause. Archer challenges that portion of the court's order.

4

II.

"The standard of review of a trial court's order on a motion to compel arbitration is de novo." *Northport Health Servs. of Fla., LLC v. Louis*, 240 So. 3d 120, 122 (Fla. 5th DCA 2018).

A.

Under Florida and federal law, courts generally favor the use of arbitration agreements. *Fort Walton Rehab. Ctr., LLC v. Est. of Etheleene Galloway Gordon*, 340 So. 3d 533, 535 (Fla. 1st DCA 2022). When faced with a motion to compel arbitration, a court considers three elements: "(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999). Here, the parties do not dispute the first and third elements. Instead, their disagreement is all about the second element, which is whether Zion's claims are arbitrable issues. To resolve this disagreement, we must examine the connection between Zion's claims "as [they are] alleged in the complaint" and the parties' contract. *See id.* at 640.

In *Seifert*, the Supreme Court of Florida held that "even in contracts containing broad arbitration provisions, the determination of whether a particular claim must be submitted to arbitration necessarily depends on the existence of some nexus between the dispute and the contract containing the arbitration clause." *Id.* at 638. As such, arbitration is appropriate if there is a "significant relationship" between the claim and the contract—i.e., "if the claim presents circumstances in which the resolution of the disputed issue requires either reference to, or construction of, a portion of the contract." *Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013). This test applies when, as in this case, "the arbitration agreement uses broad language that does not expressly include the claim at issue." *Lennar Homes, LLC v. Wilkinsky*, 353 So. 3d 654, 656 (Fla. 4th DCA 2023).*

---

* In its briefs, Archer suggested that the wording of the parties' arbitration clause was so broad that it need not undergo a contractual nexus/significant relationship analysis. During oral argument, Archer rightly acknowledged that this argument

5

B.

Thus, our task is to decide whether Zion's claims for littering, trespass, organized fraud, and gross negligence, as pleaded, "present[] circumstances in which the resolution of the disputed issue requires either reference to, or construction of, a portion of the contract." *Jackson*, 108 So. 3d at 593. If they do, they are subject to the contract's broad arbitration clause. *See id.*

"The purpose of pleadings is to present, define, and narrow the issues" that are in dispute. *State Farm Mut. Auto. Ins. Co. v. Davis*, 336 So. 3d 392, 398 (Fla. 5th DCA 2022) (quoting *White v. Fletcher*, 90 So. 2d 129, 131 (Fla. 1956)); *see also Parker v. Panama City*, 151 So. 2d 469, 472 (Fla. 1st DCA 1963) ("[T]he function of the complaint is to accurately inform the defendant and the court of the nature of plaintiff's claim."). Indeed, "pleadings function as a safeguard of due process by ensuring that the parties will have prior, meaningful notice of the claims, defenses, rights, and obligations that will be at issue when they come before a court." *Tracey v. Wells Fargo Bank, N.A., as Tr. for Certificateholders of Banc of Am. Mortg. Sec., Inc.*, 264 So. 3d 1152, 1155 (Fla. 2d DCA 2019). This notice includes the fact that "[a]ny exhibit attached to a pleading must be considered a part thereof **for all purposes**." Fla. R. Civ. P. 1.130(b) (emphasis added).

Here, as we referenced above, Zion attached the contract as an exhibit to the complaint and incorporated the contract into *all* of its claims. The pervasive theme of Zion's complaint is that Archer deviated from what the parties' contract authorized. That is, Zion alleges that Archer's conduct was improper because it differed from what the agreement permitted. And that may be true. But the question of whether Archer colored outside the lines can only be answered *by referring to the agreement. See Jackson*, 108 So. 3d at 593. Having anchored its complaint to the contract—and repeatedly trafficked in its provisions—Zion cannot now divorce its claims from the language of the agreement. Thus,

becomes superfluous if all of Zion's claims have a nexus to the parties' contract.

6

Zion's claims are "inextricably intertwined" with the contract. *See id.* at 594–95.

## III.

Archer and Zion formed an agreement that included a broad arbitration clause. Zion then filed a complaint against Archer that attached and incorporated the contract in every claim. Because adjudicating Zion's claims against Archer for littering, trespass, organized fraud, and gross negligence "requires either reference to, or construction of, a portion of the contract," those claims are captured by the contract's broad arbitration clause. *See id.* at 593. Accordingly, we reverse the portion of the trial court's order that ruled those claims are not subject to arbitration, and remand with directions to grant Archer's motion to compel the arbitration of all Zion's claims against Archer.

AFFIRMED in part, REVERSED in part, and REMANDED.

EDWARDS, C.J., and LAMBERT, J., concur.

———————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————————

7