DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CALVARY CHAPEL CHURCH, INC.** d/b/a **CALVARY CHRISTIAN ACADEMY, CALVARY CHAPEL OF FT. LAUDERDALE, INC.,** and **JOSEPH WILSON**,
Appellants,

v.

**COLLEEN HAPP,** as Personal Representative of the
**ESTATE OF COLIN CHARLES HAPP**,
Appellee.

No. 4D22-1887

[January 4, 2023]

Appeal of a nonfinal order from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Sandra Perlman, Judge; L.T. Case No. CACE22-003250.

Mitchell L. Lundeen and Katherine M. Martinez of Chartwell Law, Miami, for appellants.

Thomas Scolaro and Adam T. Rose of Leesfield Scolaro, P.A., Miami, and Elliot B. Kula and William D. Mueller of Kula & Associates, P.A., Miami, for appellee.

DAMOORGIAN, J.

Appellants (collectively "the School") appeal a nonfinal order denying their motion to dismiss Appellee's ("the plaintiff") wrongful death complaint or, in the alternative, to compel arbitration. We agree with the School that the plaintiff's claims are subject to the arbitration clauses at issue, and reverse and remand.

The plaintiff sued the School for wrongful death after her 13-year-old son committed suicide following the School's request that he withdraw from the school for selling a vape pen to another student. The complaint alleged the School violated its policies and procedures and a common law duty to assess and provide suicide prevention and crisis support to a disciplined student. Specifically, the complaint alleged:

> At all times material, Defendants and CCA [the School], *consistent with their policies and procedures*, owed a duty of reasonable care to assess disciplined students like COLIN to see if they were in crisis, and to determine specifically what care was needed to address that crisis and minimize the risk of self-harm or suicide.
>
> . . . .
>
> Notwithstanding Defendants and CCA's *policies and procedures*, knowledge that COLIN's withdrawal would be highly traumatic, and knowing that COLIN was in utter shock from that trauma, CCA failed to evaluate or take any steps to assess COLIN and determine appropriate behavioral, social, or crisis support treatment. . . . .

(emphasis added). The complaint further alleged the School was negligent for "[f]ailing to conduct a full investigation" and "imposing a punishment that had no basis in Defendants' *policies and procedures*." (emphasis added). Notably, at least twenty of the complaint's allegations implicated the School's investigation of the incident and the appropriateness of the School's disciplinary measures.

The School moved to dismiss the complaint or, in the alternative, to compel arbitration pursuant to the enrollment contract which the plaintiff signed when the child was admitted to the school. The enrollment contract provides:

> In the event of a disagreement with CCA, or if I have a legal claim against CCA, I agree to address any such disagreement or claim through the process of conflict resolution, including Christian mediation and binding arbitration as outlined in the Parent/Student Handbook.

The Parent/Student Handbook ("the handbook"), in turn, provides:

> [A]ny claim or dispute *arising out of your student's enrollment* at CCA shall be settled by biblically-based mediation and, if mediation is not successful, legally binding arbitration in accordance with the Guidelines for Christian Conciliation (the "Rules") of the Institute for Christian Conciliation (ICC). . . .
>
> . . . .

2

The parties to this Agreement agree that these methods shall be the sole remedy for *any controversy or claim arising out of this Agreement* and expressly waive their right to file a lawsuit against one another in any civil court for such disputes, including any class action proceeding, except to enforce a legally binding arbitration decision. The parties acknowledge that by waiving their legal rights to file a lawsuit to resolve any dispute between them, they are not waiving their right to employ legal counsel at their own expense to assist them in any phase of the decision.

(emphasis added). Notably, the handbook also contains a section prohibiting vape pens and providing that a student's possession or use of a vape pen "will result in immediate suspension and probation, and will cause his or her enrollment to be subject to termination."

The trial court ultimately denied the School's motion, concluding the plaintiff's claims did not arise out of the child's enrollment at the school. This timely appeal follows.

"Generally, the three fundamental elements that must be considered when determining whether a dispute is required to proceed to arbitration are: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." *Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013). As the parties agree that a valid written agreement to arbitrate exists and no waiver occurred, the only issue before this Court is whether the plaintiff's wrongful death claim creates an "arbitrable issue" under the enrollment contract and handbook's arbitration clauses.

Our answer to that question depends upon a determination of whether the arbitration clauses are narrow in scope or broad in scope. *See id.* ("Two basic types of arbitration provisions have emerged: (1) provisions with language and application narrow in scope, and (2) provisions with language and application broad in scope."). As the Florida Supreme Court held in *Jackson*:

An arbitration provision that is considered to be narrow in scope typically requires arbitration for claims or controversies "arising out of" the subject contract. This type of provision limits arbitration to those claims that have a direct relationship to a contract's terms and provisions. In contrast, an arbitration provision that is considered to be broad in scope typically requires arbitration for claims or controversies

3

"arising out of *or relating to*" the subject contract. The addition of the words "relating to" broadens the scope of an arbitration provision to include those claims that are described as having a "significant relationship" to the contract—regardless of whether the claim is founded in tort or contract law.

*Id.* (internal citations omitted); *see also Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636–37 (Fla. 1999) (recognizing that "clauses including all claims or controversies 'arising out of' the subject contract have been considered by some courts to be narrow in scope," whereas clauses including all claims and controversies "'arising out of or relating to' the contract has been interpreted broadly to encompass virtually all disputes between the contracting parties, including related tort claims").

Applying the above principles, we hold the arbitration clauses in this case are narrow in scope. Although the enrollment contract's arbitration clause refers generally to "a legal claim against" the School, the clause then states that such claims must be resolved through binding arbitration as outlined in the handbook. The handbook's arbitration clause, in turn, specifies that "any claim or dispute *arising out of your student's enrollment* at CCA shall" be resolved by binding arbitration and "[t]he parties to this Agreement agree that these methods shall be the sole remedy for any controversy or claim *arising out of this Agreement.*" (emphasis added). The lack of the words "or relating to" restricts arbitration to claims arising out of the enrollment contract and handbook. *See BREA 3-2 LLC v. Hagshama Fla. 8 Sarasota, LLC*, 327 So. 3d 926, 933–34 (Fla. 3d DCA 2021) (holding that an arbitration provision providing that "[a]ny dispute under this Agreement or any Exhibit attached hereto shall be submitted to arbitration" was undoubtedly narrow in scope, and therefore the stricter "direct relationship" test applied).

Concluding that the arbitration clauses are narrow in scope, we must next determine whether the plaintiff's wrongful death action "arises out of" the enrollment contract and handbook and have a "direct relationship" to the narrow arbitration clauses. We answer yes to these questions.

Although the plaintiff's action sounds entirely in tort and does not specifically include a breach of contract claim, the claims have a direct relationship to the enrollment contract and handbook's terms and provisions. For example, the complaint repeatedly references the School's "policies and procedures" when discussing the duty owed to the student. Moreover, the complaint references the School's "policies and procedures" when discussing the School's alleged failure to properly investigate the incident, take appropriate disciplinary measures, and evaluate the student to determine the appropriate post-disciplinary support treatment. In other

4

words, the complaint expressly relies on the enrollment contract and handbook to establish the School's duty to the student, the alleged breach of which formed the basis of the wrongful death action. *Cf. id.* at 934 (holding that a narrow arbitration clause contained in a real estate development agreement did not apply to the plaintiff's usury claim because the claim did not arise under the agreement but rather under Florida's usury statute; "[t]hat is, the duty and obligation not to commit usury, and the resulting illegality of the Agreement, arise under state statutory law").

Accordingly, the order denying the School's motion to dismiss or compel arbitration is reversed, and this matter is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

FORST and KUNTZ, JJ., concur.

*    *    *

**Not final until disposition of timely filed motion for rehearing.**