# Third District Court of Appeal

## State of Florida

Opinion filed April 3, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-1458
Lower Tribunal No. 23-17019
_____

## Pro-Play Games, LLC, et al.,
Appellants,

vs.

## Philippe Charles Roger,
Appellee.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, David C. Miller, Judge.

Rafool, LLC, and David R. Hazouri and Raymond J. Rafool, II, for appellants.

Adorno-Cunill & Damas, PL, and John Cunill; VenturaLaw, and Rafael Ventura, for appellee.

Before LOGUE, C.J., and EMAS and MILLER, JJ.

LOGUE, C.J.

Pro-Play Games, LLC and George Christopher Machado appeal the trial court's denial of their motion to compel arbitration. Appellants,

defendants below, contend the trial court erred in two regards. First, by ruling that plaintiff Philippe Charles Roger's claim of improper removal was not within the scope of the arbitration clause contained in the parties' Operating Agreement. Second, by ruling that Appellants' improper removal of Roger so violated the Operating Agreement as to constitute a waiver of the Operating Agreement's arbitration provision. We agree that the trial court erred on both points, and therefore reverse.

## **BACKGROUND**

Roger and Machado established Pro-Play Games in 2015. They are the sole members. They executed an Operating Agreement on June 29, 2015, which provided in relevant part as follows:

> In the event a dispute arises out of or in connection with this Agreement, the parties will attempt to resolve the dispute through friendly consultation. If the dispute is not resolved within a reasonable period then any or all outstanding issues may be submitted to mediation in accordance with any statutory rules of mediation. If mediation is not successful in resolving the entire dispute or is unavailable, any outstanding issues will be submitted to final and binding arbitration in accordance with the laws of the State of Florida. The arbitrator's award will be final, and judgment may be entered upon it by any court having jurisdiction within the State of Florida.

On March 7, 2023, Machado hand delivered a written demand for mediation to Roger pursuant to the terms of the Operating Agreement. The

2

demand letter alleged misconduct by Roger in violation of various sections of the Operating Agreement and sections 605.0110 and 605.04091, Florida Statutes. The demand letter referred to Paragraph 66 of the Operating Agreement, which provided that "[a]ny violation of the above forbidden acts will be deemed an Involuntary Withdrawal of the offending Member and may be treated accordingly by the remaining Members."

Paragraph 34 of the Operating Agreement dealt with the Involuntary Withdrawal of a Member, providing as follows:

> Events leading to the involuntary withdrawal of a Member from the Company will include but not be limited to: death of a Member; Member mental incapacity; Member disability preventing reasonable participation in the Company; Member incompetence; breach of fiduciary duties by a Member; criminal conviction of a Member; Operation of Law against a Member or a legal judgment against a Member that can reasonably be expected to bring the business or societal reputation of the Company into disrepute. Expulsion of a Member can also occur on application by the Company or another Member, where it has been judicially determined that the Member: has engaged in drunk driving, drug use on campus, statutory rape, theft, or convicted of fraud; has willfully or persistently committed a material breach of the Operating Agreement or of a duty owed to the Company or to the other Members; or has engaged in conduct relating to the Company's business that makes it not reasonably practicable to carry on the business with the Member.

The demand letter further stated that Roger was to "cease all management of the Company's affairs while the parties work through the resolution of these matters," "effective immediately."

Mediation was conducted on April 11, 2023, ending in an impasse. Immediately following the mediation, Machado made a written demand for arbitration via email. While the parties initially agreed on an arbitrator, they disagreed regarding the applicable evidentiary rules and whether the cost of arbitration should be split. Roger stated that Machado should pay for the arbitration because he was the one demanding arbitration, while Machado refused to be solely responsible for the cost of an arbitration that, in his view, was required because of Roger's actions. Thereafter, on May 19, 2023, Roger filed the underlying action against Machado and Pro-Play Games. Roger's complaint contained five counts.

Count I sought dissolution of Pro-Play Games pursuant to Chapter 605, Florida Statutes.

Count II sought a declaratory judgment on whether: (i) Machado was authorized to act alone without a membership meeting and without a tie-breaking vote to unilaterally deem Roger "involuntarily withdrawn"; (ii) Machado's actions subsequent to his unilateral determination that Roger was "involuntarily withdrawn" from the company were lawful; (iii) Paragraph

4

68 of the Operating Agreement provided Roger with immunity from "involuntary withdrawal" for actions taken by him in good faith and within the scope of authority conferred or implied by the Operating Agreement or the company; (iv) Machado breached his fiduciary duties to Roger by unlawfully declaring him to have involuntarily withdrawn when Roger's actions were taken in good faith and thus protected under Paragraph 68 of the Operating Agreement.

Count III sought an accounting based on Machado's refusal to allow Roger access to Pro-Play Games' financial records and accounts.

Count IV alleged a claim for breach of contract and sought damages resulting from Machado's alleged breach of the Operating Agreement for not submitting the involuntary withdrawal determination to a member vote and tie-break as required by the Operating Agreement.

Count V, entitled "Statutory Relief under Chapter 682, Florida Statutes," sought a determination regarding whether Machado had waived arbitration.

On June 7, 2023, Machado and Pro-Play Games filed a Verified Joint-Motion to Stay Action and Compel Arbitration. They argued that all of Roger's claims were within the scope of the Operating Agreement's arbitration clause and that they did not voluntarily and intentionally relinquish their rights to

5

arbitrate the claims. Roger filed a response in opposition and argued that Machado's email response addressing the parties' disputes concerning payment of the arbitration proceeding and the applicable rules constituted a refusal to arbitrate, thereby waiving the right to arbitrate Roger's claims. Roger further argued that, with the admitted exception of Count IV for breach of contract, Roger's remaining claims were not arbitrable.

On July 17, 2023, the trial court held a hearing on Pro-Play Games and Machado's motion to compel arbitration. After considering the parties' arguments and hearing testimony from Machado, the trial court orally ruled it was finding a waiver of the right to arbitrate. The trial court further found that Machado needed a judicial determination "as contemplated by [P]aragraph 34" before Roger could be deemed involuntarily withdrawn from Pro-Play Games.

On July 25, 2023, the trial court issued its written opinion denying Machado and Pro-Play Games' Verified Joint-Motion to Stay Action and Compel Arbitration. In its order, the trial court made the following findings:

1. The Court finds Defendant, George Machado, testified that he removed Plaintiff as a Member of the Defendant Pro-Play Games, LLC, prior to arbitration, and without taking a vote of the members of the Company.

6

2. The Court finds that Defendants thereby waived Defendants' rights to arbitrate those claims asserted in Plaintiff's Complaint because the actions taken by the Defendant in his attempt to remove Plaintiff from the membership were not in keeping with the Company's Operating Agreement.

3. The Court finds that the question of whether a member was properly removed from the Company is a question for judicial determination and is not arbitrable.

This appeal timely followed.

## ANALYSIS

"This Court reviews an order granting or denying a motion to compel arbitration de novo." Duty Free World, Inc. v. Miami Perfume Junction, Inc., 253 So. 3d 689, 693 (Fla. 3d DCA 2018). When ruling on a motion to compel arbitration, courts consider three elements: "(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." Seifert v. U.S. Home Corp., 750 So. 2d 633, 636 (Fla. 1999). Review "is limited to the four corners of the complaint and its incorporated attachments. The purpose of the review is to test the legal sufficiency of the complaint; not to determine factual issues." Jackson v. Shakespeare Found., Inc., 108 So. 3d 587, 593 (Fla. 2013)

7

(internal citations omitted). This case also concerns "a matter of contract interpretation, which is a question of law subject to de novo review." Id.

I.    Whether an Arbitrable Issue Exists

The question of whether a member of Pro-Play Games was properly removed from the company is an arbitrable issue and the trial court erred in concluding otherwise.

a. The Issues Are Arbitrable Under the Operating Agreement

The Operating Agreement's arbitration clause provided that "a dispute aris[ing] out of or in connection with this Agreement . . . will be submitted to final and binding arbitration in accordance with the laws of the State of Florida." This type of arbitration provision is broad in scope. See id.; see also id. at 597 (citing Parfi Holding AB v. Mirror Image Internet, Inc., 817 A.2d 149, 155 (Del. 2002)).

"[T]he test for determining arbitrability of a particular claim under a broad arbitration provision is whether a 'significant relationship' exists between the claim and the agreement containing the arbitration clause, regardless of the legal label attached to the dispute." Hagstrom v. Co.Fe.Me. USA Marine Exhaust, LLC, 322 So. 3d 145, 149 (Fla. 3d DCA 2021) (quoting Seifert, 750 So. 2d at 637-38).

> A "significant relationship" . . . is described to exist
> between an arbitration provision and a claim if there

8

is a "contractual nexus" between the claim and the contract. A contractual nexus exists between a claim and a contract if the claim presents circumstances in which the resolution of the disputed issue requires either reference to, or construction of, a portion of the contract. More specifically, a claim has a nexus to a contract and arises from the terms of the contract if it emanates from an inimitable duty created by the parties' unique contractual relationship.

Jackson, 108 So. 3d at 593 (internal citations omitted).

Here, the trial court concluded "that the question of whether a member was properly removed from [Pro-Play Games] is a question for judicial determination and is not arbitrable." In reaching this conclusion, the trial court during the hearing reasoned that the provisions of the Operating Agreement relating to involuntary withdrawal required a "judicial determination" of the issue. In doing so, the trial court specifically referred to Paragraph 34 of the Operating Agreement. This interpretation of Paragraph 34 directly conflicts with the plain language of the provision.

Paragraph 34 provides:

Events leading to the involuntary withdrawal of a Member from the Company will include but not be limited to: death of a Member; Member mental incapacity; Member disability preventing reasonable participation in the Company; Member incompetence; breach of fiduciary duties by a Member; criminal conviction of a Member; Operation of Law against a Member or a legal judgment against a Member that can reasonably be expected to bring the business or societal reputation of the Company

9

into disrepute. Expulsion of a Member <u>can also occur</u> on application by the Company or another Member, <u>where it has been judicially determined that the Member</u>: has engaged in drunk driving, drug use on campus, statutory rape, theft, or convicted of fraud; <u>has willfully or persistently committed a material breach of the Operating Agreement or of a duty owed to the Company or to the other Members; or has engaged in conduct relating to the Company's business that makes it not reasonably practicable to carry on the business with the Member</u>.

(emphases added).

While Paragraph 34 makes mention of a judicial determination, this is merely in the context of some additional bases for which a member or the company can seek expulsion of another member through involuntary withdrawal. Nowhere in Paragraph 34 does it state that involuntary withdrawal of a member can occur <u>only</u> after a judicial determination. In fact, the first half of the provision allows for involuntary withdrawal of a member based on a breach of fiduciary duties by the member, with no mention of a judicial determination of same: "Events leading to the involuntary withdrawal of a Member from the Company will include but not be limited to: . . . <u>breach of fiduciary duties by a Member</u> . . . ." (emphasis added). Accordingly, there is nothing in Paragraph 34 that would preclude an arbitrator from resolving the question of whether a member of Pro-Play Games was properly removed from the company.

10

b. The Complaint Pleads a "Contractual Nexus"

Furthermore, a review of each of the counts of Roger's complaint establishes that there is a "contractual nexus" between the claims and the Operating Agreement, rendering them arbitrable. See Jackson, 108 So. 3d at 593.

Count I seeks dissolution of Pro-Play Games pursuant to Chapter 605, Florida Statutes. While Roger contends judicial dissolution of a limited liability company is not an arbitrable issue, he cites no authority for this contention other than the dissolution statute, section 605.0702(1), Florida Statutes, which expressly states: "A circuit court may dissolve a limited liability company . . . ." (emphasis added). Moreover, courts have held, in the context of partnerships and corporations, that an action for dissolution was subject to arbitration. See Sharpe v. Lytal & Reiter, Clark, Sharpe, Roca, Fountain, Williams, 702 So. 2d 622, 623-24 (Fla. 4th DCA 1997); Travel Express Investments, Inc. v. Hemani, No. 6:08-CV-01699-ORL-35DAB, 2009 WL 10670424, at *3 (M.D. Fla. May 12, 2009).

Count II seeks a declaratory judgment on whether: (i) Machado was authorized to act alone without a membership meeting and without a tie-breaking vote to unilaterally deem Roger "involuntarily withdrawn"; (ii) Machado's actions subsequent to his unilateral determination that Roger

11

was "involuntarily withdrawn" from the company were lawful; (iii) Roger was entitled to immunity from "involuntary withdrawal" for actions taken by him in good faith and within the scope of authority conferred or implied by the Operating Agreement or the company pursuant to Paragraph 68 of the Operating Agreement; and (iv) Machado breached his fiduciary duties to Roger by unlawfully declaring him to have involuntarily withdrawn when Roger's actions were taken in good faith and thus protected under Paragraph 68 of the Operating Agreement.

The declaratory relief sought requires reference to, and construction of, several provisions of the Operating Agreement. Roger's requests for declaratory relief, moreover, essentially center on the duties Roger and Machado owed each other as the sole members of Pro-Play Games and whether Machado breached his duties through his actions in unilaterally determining that Roger was "involuntarily withdrawn" from the company. These questions are necessarily controlled by the terms of the Operating Agreement. As such, the claim is arbitrable.

Roger does not appear to argue on appeal that Counts III-V are also not arbitrable. Nevertheless, Count III seeks an accounting, which Florida courts have held is arbitrable. See Drs. Assocs., Inc. v. Thomas, 898 So. 2d 159, 163 (Fla. 4th DCA 2005). Roger conceded during the hearing that Count

IV for breach of contract was subject to arbitration. Finally, the allegations of Count V for Statutory Relief under Chapter 682, Florida Statutes, are the same ones being resolved via the motion to compel arbitration. Therefore, the resolution of the motion to compel arbitration renders this claim moot.

II.     Whether the Right to Arbitration was Waived

The trial court also erred in finding that Pro-Play Games and Machado waived their right to arbitrate Roger's claims. The trial court reached this conclusion based on its determination that Machado's actions in attempting to remove Roger as a member of Pro-Play Games was "not in keeping with the [c]ompany's Operating Agreement."

> Waiver is the voluntary and intentional relinquishment of a known right or conduct which implies the voluntary and intentional relinquishment of a known right. Courts resolve all doubts regarding waiver in favor of arbitration rather than against it. The party arguing waiver of arbitration bears a heavy burden of proof. A party claiming waiver of arbitration must show: 1) knowledge of an existing right to arbitrate and 2) active participation in litigation or other acts inconsistent with the right. In determining whether a party waived its right to arbitrate, the essential question is whether, under the totality of the circumstances, the defaulting party has acted inconsistently with the arbitration right.

Running Cars, LLC v. Miller, 333 So. 3d 1177, 1179 (Fla. 1st DCA 2022) (internal citations omitted).

13

Pro-Play Games and Machado have not acted inconsistently with their arbitration right. Not only did they move to compel arbitration at the first opportunity after being served with Roger's complaint, but they made a written demand for arbitration to resolve the parties' dispute even before Roger filed the underlying action.

Further, as established above, the question of whether Machado wrongfully sought to expel Roger from Pro-Play Games in violation of the terms of the Operating Agreement is an arbitrable issue. As such, contrary to the trial court's conclusion, Machado's actions in "remov[ing] [Roger] as a [m]ember of [Pro-Play Games], prior to arbitration, and without taking a vote of the members of the [c]ompany" cannot constitute a waiver of the right to arbitrate. See Sharpe, 702 So. 2d at 622 (compelling arbitration of suit brought to dissolve partnership on grounds that defendants wrongfully expelled plaintiff as a partner). Especially when Machado also invoked arbitration to resolve the disputes that led him to invoke the involuntary withdrawal provision of the Operating Agreement to remove Roger. Cf. Mirro v. Freedom Boat Club, LLC, 328 So. 3d 1108, 1110 (Fla. 2d DCA 2021) ("[A] party may waive his or her right to arbitration by filing a lawsuit without seeking arbitration, by filing an answer to a pleading seeking affirmative relief without raising the right to arbitration, and by moving for summary judgment."

14

(citation omitted)). Under the totality of the circumstances, it cannot be said that Machado acted inconsistently with the arbitration right. Whether he breached the Operating Agreement as Roger claims in the underlying action is for the arbitrator to decide.

## **CONCLUSION**

The question of whether Roger was properly removed from Pro-Play Games presents an arbitrable issue, and a review of each of the counts of Roger's complaint establishes that there is a "contractual nexus" between the claims and the Operating Agreement, rendering them arbitrable. Additionally, Pro-Play Games and Machado did not waive their arbitration right as they acted consistently with the right by moving to compel arbitration at the first opportunity after being served with Roger's complaint.

Reversed.

15